**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF THE NEW YORK TIMES COMPANY AND CHARLIE SAVAGE FOR ACCESS TO CERTAIN DOCKETS, ORDERS, LEGAL BRIEFING, AND ARGUMENT TRANSCRIPTS ANCILLARY TO JANUARY 6 GRAND JURY PROCEEDINGS | Case: 1:22–mc–00100<br>Assigned To : Howell, Beryl A.<br>Assign. Date : 10/21/2022<br>Case No. _Description: Misc._<br>Chief Judge Beryl A. Howell |

**APPLICATION OF THE NEW YORK TIMES COMPANY AND CHARLIE
SAVAGE FOR ACCESS TO CERTAIN DOCKETS, ORDERS, LEGAL
BRIEFING AND ARGUMENT TRANSCRIPTS ANCILLARY TO JANUARY 6
<u>GRAND JURY PROCEEDINGS</u>**

Pursuant to Local Criminal Rules 57.6 and 6.1, The New York Times Company and its journalist Charlie Savage (together, "the Times"), by and through undersigned counsel, respectfully move the Court for access to unsealed versions of judicial filings in certain proceedings ancillary to grand jury proceedings, excluding the release of information regarding matters "occurring before the grand jury." *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 502-04 (D.C. Cir. 1998). Specifically, the Times seeks access to dockets, court opinions and orders, legal briefing, and argument transcripts, including such materials regarding the scope of executive privilege invoked by former President Donald J. Trump or former Trump Administration officials, redacted to remove factual material that is properly subject to secrecy under Rule 6(e) of the Federal Rules of Criminal Procedure. *McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019).

For the reasons set forth above, and explained more fully in the accompanying Memorandum of Points and Authorities, The Times respectfully requests that the Court grant this application and unseal versions of the requested documents.

Dated:  October 21, 2022          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Chad R. Bowman*
Chad R. Bowman (#484150)
Matthew E. Kelley (#1018126)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
bowmanchad@ballardspahr.com
kelleym@ballardspahr.com

*Counsel for The New York Times Company
and Charlie Savage*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF THE NEW YORK TIMES COMPANY AND CHARLIE SAVAGE FOR ACCESS TO CERTAIN DOCKETS, ORDERS, LEGAL BRIEFING, AND ARGUMENT TRANSCRIPTS ANCILLARY TO JANUARY 6 GRAND JURY PROCEEDINGS | Case No. _____<br>Chief Judge Beryl A. Howell |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION OF THE NEW YORK TIMES COMPANY AND CHARLIE SAVAGE FOR ACCESS TO CERTAIN DOCKETS, ORDERS, LEGAL BRIEFING AND ARGUMENT <u>TRANSCRIPTS ANCILLARY TO JANUARY 6 GRAND JURY PROCEEDINGS</u>**

BALLARD SPAHR LLP

Chad R. Bowman (#484150)
Matthew E. Kelley (#1018126)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
bowmanchad@ballardspahr.com
kelleym@ballardspahr.com

*Counsel for The New York Times Company*
*and Charlie Savage*

## LOCAL RULE 57.6 STATEMENT OF INTEREST

The New York Times Company, publisher of *The New York Times* ("*The Times*"), is a print and digital news organization with more than nine million subscribers worldwide, and more than 150 million monthly global readers.  With more than 1,700 journalists on staff, the company is "dedicated to helping people understand the world through on-the-ground, expert and deeply reported independent journalism."[1]  In its 171-year history, *The Times* has won 132 Pulitzer Prizes and numerous other recognitions for its work to shed light on matters of public concern. As relevant here, *The Times* and its journalists, including Washington correspondent Charlie Savage,[2] regularly cover U.S. political and criminal news, and their intersection, such as the various criminal investigations related to the January 6, 2021, Capitol attack and other efforts to overturn the results of the 2020 presidential election.

## PRELIMINARY STATEMENT

*The Times* and other news media outlets reported several weeks ago on the existence of a closed-door legal dispute in this Court over the scope of executive privilege that a former president and his aides may properly assert in grand jury proceedings related to 2020 presidential election and the January 6, 2021, certification of that election's results.  *See, e.g.*, Alan Feuer and Maggie Haberman, *Trump Lawyers Push to Limit Aides' Testimony in Jan. 6 Inquiry*, N.Y. Times (Sept. 23, 2022), https://www.nytimes.com/2022/09/23/us/trump-privilege-investigation.html (attached hereto as Exhibit H) ("Lawyers for former President Donald J. Trump are engaged in a behind-the-scenes legal struggle to limit the scope of a federal grand jury investigation into the role he played in seeking to overturn the 2020 election, according to people

---

[1] *See Company*, The New York Times Company, *available at* https://www.nytco.com/company/.

[2] This application is brought jointly by The New York Times Company and Mr. Savage (together, "The Times").

familiar with the matter."); *see also* Evan Perez, Katelyn Polantz & Zachary Cohen, *Exclusive: Trump's secret court fight to stop grand jury from getting information from his inner circle*, CNN (Sept. 24, 2022) https://www.cnn.com/2022/09/23/politics/trump-grand-jury-court-fight/index.html (attached hereto as Exhibit I).  Subsequent news reports have indicated that this dispute has been resolved, at least in part, in a "sealed decision" by this Court.  *See* Spencer S. Hsu, Josh Dawsey & Jacqueline Alemany, *Judge bucks Trump, orders Pence aide to testify to Jan. 6 grand jury*, Wash. Post (Oct. 14, 2022), https://www.washingtonpost.com/dc-md-va/2022/10/14/marc-short-grand-jury-testify-pence-trump (attached hereto as Exhibit K).

The Times recognizes that, under controlling authority in this Circuit, the Court can unseal information that would disclose "matters occurring before a grand jury" only where permitted by Rule 6(e) of the Federal Rules of Criminal Procedure, *McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019),[3] and The Times expressly does not seek the disclosure here of information that rule does not permit.  Specifically, The Times does *not* seek "'the identities of witnesses or jurors, the substance of testimony . . . the strategy or direction of the investigation, the deliberations or questions of jurors, and the like,'" *In re Motions of Dow Jones & Co*. ("*Dow Jones*"), 142 F.3d 496, 500 (D.C. Cir. 1998) (citations omitted), at least at this time, *In re Grand Jury Proceedings (Miller)*, 493 F.3d 152, 154 (D.C. Cir. 2007) ("[W]hen once-secret grand jury material becomes sufficiently widely known, it may lose its character as Rule 6(e) material."); *see also CNN v. United States (In re Unseal Dockets Related to the Indep. Counsel's 1988 Investigation of President Clinton)*, 2020 U.S. App. LEXIS 15468, at *2 (D.C. Cir. May 13, 2020) (same).

---

[3] The Times does not argue that another statutory basis for disclosure of Rule 6(e) material applies here.  *See, e.g.*, *In re Application of Reporters Committee for Freedom of the Press*, 2019 U.S. Dist. LEXIS 165910, at *4 n.2 (D.D.C. Sept. 26, 2019) (Howell, C.J.) (noting possible additional statutory bases for disclosure of Rule 6(e) grand jury materials).

What the Times *does* seek is access to redacted versions of any dockets, court opinions or orders, legal briefing, and argument transcripts ancillary to the grand jury investigation, including such materials regarding the scope of executive privilege invoked by former President Donald J. Trump or former Trump Administration officials.  As set forth below, it has become public knowledge that such privilege assertions have been made in motion practice ancillary to a grand jury investigation.  Because this legal issue—among others, perhaps—is distinct from the proceedings before the grand jury, this Court has discretion pursuant to Local Criminal Rule 6.1 to unseal the relevant documents, at least in part.  "Papers, orders, and transcripts of hearings" in proceedings ancillary to grand jury proceedings may properly be unsealed, so long as they do not disclose matters occurring *before a grand jury*.  L. Crim. R. 6.1.  Given the profound national interest in the purely legal issues being resolved through these judicial documents, The Times respectfully requests that the Court exercise its discretion to unseal redacted versions of any rulings by the Court, motions briefing, or hearing transcripts related to the privilege issue.

## RELEVANT PUBLIC BACKGROUND

It is public knowledge, of course, that grand juries in this District have considered evidence relating to the January 6, 2021, attack on the U.S. Capitol.  Indeed, 15 months ago this Court noted that, "[t]o date, over 170 indictments, charging more than 200 Capitol attack defendants with felony offenses, have been returned by grand juries sitting in this District."  *In re Capitol Breach Grand Jury Investigations Within the District of Columbia*, 339 F.R.D. 1, 7 (D.D.C. 2021).

According to numerous news reports in recent months, the Jan. 6-related investigations have expanded to election certification-related activities by officials in the Trump Administration.  *The Times* reported in May 2022 that the investigators had expanded their focus to encompass "the creation of alternate slates of pro-Trump electors seeking to overturn Joseph

R. Biden Jr.'s victory in the 2020 election, with a particular focus on a team of lawyers that worked on behalf of President Donald J. Trump." *See* Alan Feuer, Kate Benner & Luke Broadwater, *Intensifying Inquiry Into Alternate Electors Focuses on Trump Lawyers*, N.Y. TIMES (May 25, 2022), https://www.nytimes.com/2022/05/25/us/politics/pro-trump-lawyers-elector-scheme.html (attached hereto as Exhibit A).  According to that news report, grand jury subpoenas were issued to Trump lawyers Rudolph W. Giuliani and John Eastman, among others. *Id.*

Later in the summer, ABC News reported that Marc Short, former chief of staff to former Vice President Mike Pence, appeared before the grand jury, while CNN reported that former Pence counsel Greg Jacob testified.  Other news organizations matched those reports.  *See* Alan Feuer & Maggie Haberman, *Top Pence Aides Testify to Grand Jury in Jan. 6 Investigation*, N.Y. TIMES (July 25, 2022), https://www.nytimes.com/2022/07/25/us/politics/marc-short-pence-jan-6.html (attached hereto as Exhibit B).  In the following weeks, former Trump White House counsel Pat A. Cipollone, deputy counsel Patrick Philbin, and Trump lawyer Eric Herschmann reportedly received similar subpoenas.  *See* Maggie Haberman & Luke Broadwater, *Justice Dept. Subpoenas Pat Cipollone, Trump White House Counsel*, N.Y. TIMES (Aug. 2, 2022), https://www.nytimes.com/2022/08/02/us/politics/pat-cipollone-subpoena.html (attached hereto as Exhibit C); Betsy Woodruff Swan, *Justice Department subpoenas Trump White House lawyer Eric Herschmann*, POLITICO (Aug. 15, 2022), https://www.politico.com/news/2022/08/15/justice-department-subpoenas-trump-lawyer-eric-herschmann-00051899 (attached hereto as Exhibit D); *see also* Spencer S. Hsu, *Trump White House counsel Cipollone appears before Jan. 6 grand jury*, WASH. POST (Sept. 2, 2022), https://www.washingtonpost.com/dc-md-

4

va/2022/09/02/cipollone-philbin-jan6-grand-jury/ (attached hereto as Exhibit E) (noting that Cipollone and Philbin were observed at courthouse to appear before grand jury).

In mid-September, *The Times* reported on the service of about 40 additional grand jury subpoenas, including to a number of individuals associated with the either the Trump Administration or the Trump campaign, seeking information on the fake elector plan.  *See* Glenn Thrush, Maggie Haberman, Adam Goldman & Alan Feuer, *Justice Dept. Issues 40 Subpoenas in a Week, Expanding its Jan. 6 Inquiry*, N.Y. TIMES (Sept. 12, 2022), https://www.nytimes.com/ 2022/09/12/us/politics/trump-aides-jan-6-doj.html (attached hereto as Exhibit F) ("The new subpoenas encompass a wide variety of those in Mr. Trump's orbit, from low-level aides to his most senior advisors.").  A number of the witnesses had previously provided public testimony to the House select committee.  Counsel for one of the subpoena recipients, Bernard B. Kerik, confirmed the grand jury subpoena.  *Id.*

Executive privilege took center stage in a Sept. 16 news report based on emails between former Trump White House lawyer Eric Herschmann and Trump lawyers, which were obtained by *The Times*:

> For weeks this summer, Mr. Herschmann tried to get specific guidance from Mr. Trump's current lawyers on how to handle questions from prosecutors that raise issues of executive privilege or attorney-client privilege.
>
> After ignoring Mr. Herschmann or giving him what he seemed to consider perplexing answers to the requests for weeks, two of the former president's lawyers, M. Evan Corcoran and John Rowley, offered him only broad instructions in late August. Assert sweeping claims of executive privilege, they advised him, after Mr. Corcoran had suggested that an unspecified "chief judge" would ultimately validate their belief that a president's powers extend far beyond their time in office.
>
> Mr. Herschmann, who served on Mr. Trump's first impeachment defense team but later opposed efforts to reverse the results of the 2020 election, was hardly reassured and sounded confused by the reference to a chief judge.

> "I will not rely on your say-so that privileges apply here and be put in the middle of a privilege fight between D.O.J. and President Trump," Mr. Herschmann, a former prosecutor, responded in an email, referring to the Justice Department. The exchange was part of a string of correspondence in which, after having his questions ignored or having the lawyers try to speak directly with him on the phone instead, Mr. Herschmann questioned the competence of the lawyers involved.

Maggie Haberman & Glenn Thrush, *Trump's Team of Lawyers Marked by Infighting and Possible Legal Troubles of Its Own*, N.Y. TIMES (Sept. 16, 2022), https://www.nytimes.com/2022/09/16/us/politics/trump-lawyers-herschmann.html (attached hereto as Exhibit G).

CNN and *The Times* disclosed an apparent closed hearing on September 22, 2022, regarding a motion filed on or about Sept. 1 by lawyers for former President Trump to assert the executive privilege.  *See* Exhibits H, I.  As *The Times* noted, in its analysis of the importance of the privilege issue being litigated:

> In the Jan. 6 investigation, the Justice Department has obtained grand jury subpoenas for several former aides to Mr. Trump seeking testimony about his conversations. Mr. Trump's lawyers have instructed them not to answer questions, based on a broad conception of his residual powers of executive privilege, even though Mr. Biden has rejected the idea as not in the best interests of the United States.
>
> A dispute over whether those witnesses may lawfully decline to answer certain questions is now playing out before Beryl Howell, the chief judge of the Federal District Court for the District of Columbia, behind closed doors, according to people familiar with the matter.

Charlie Savage & Glenn Thrush, *Jan. 6 and Mar-a-Lago Inquiries Converge in Fights Over Executive Privilege*, N.Y. Times (Sept. 30, 2022), https://www.nytimes.com/2022/09/30/us/politics/trump-executive-privilege.html (attached hereto as Exhibit J).  Most recently, *The Washington Post* reported on October 14 that the Court issued a sealed decision on the scope of the privilege—and that the U.S. Court of Appeals for the D.C. Circuit declined an emergency motion to stay that testimony.  *See* Exhibit K.

In short, the Justice Department's use of grand jury subpoenas to obtain documents and testimony related to the events leading up to the Jan. 6 riot, including from former Trump administration officials, is well known.

## ARGUMENT

**I.      THE COURT HAS DISCRETION UNDER LOCAL RULE 6.1 TO UNSEAL INFORMATION IN ANCILLARY PROCEEDINGS THAT WOULD NOT REVEAL ACTIVITIES "OCCURRING BEFORE THE GRAND JURY"**

As this Court has noted, Fed. R. Crim. P. 6(e)(6) "requires that '[r]ecords, orders, and subpoenas related to grand-jury proceedings . . . be kept under seal' only 'to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury.'" *In re Capitol Breach Grand Jury Investigations*, 339 F.R.D. 1 at 7 n.5 (D.D.C. 2021) (quoting Fed. R. Crim. P. 6(e)(6)).

As such, "judicial proceedings ancillary to a grand jury proceeding, which may include a motion 'to quash a subpoena, or to compel testimony, or to immunize a witness,' as well as the attendant records, shall be shielded from the public *to the extent necessary* to prevent disclosure of matters occurring before a grand jury." *In re Grand Jury Subpoenas*, 2019 U.S. Dist. LEXIS 88421, at *5 (D.D.C. Apr. 1, 2019) (citing *Dow Jones*, 142 F.3d at 502; Fed. R. Crim. P. 6(e)(5), (6); L. Crim. R. 6.1) (emphasis added).  Local Rule 6.1 therefore provides that unsealing may occur when not necessary to preserve the secrecy of matters before the grand jury.  L. Crim. R. 6.1.  Where the need for secrecy as to the witnesses to or substantive testimony of grand jury witnesses ends, the Court has discretion to unseal documents, in whole or part.  Rule 6.1 thus "may be implemented by releasing *redacted* documents."  *Id.* at *5, 14 ("At bottom, Local Criminal Rule 6.1 provides the Reporters Committee with access to the briefs and transcripts,

with any matters occurring before the grand jury redacted."); *see also Dow Jones*, 142 F.3d at

505 (remanding for consideration of possible redactions).

## II.     THE COURT SHOULD EXERCISE ITS DISCRETION TO UNSEAL THOSE PORTIONS OR COURT ORDERS, BRIEFING, AND ARGUMENT TRANSCRIPTS THAT DO NOT REVEAL INFORMATION OCCURRING BEFORE A GRAND JURY

The D.C. Circuit has recognized that "[t]here can be no doubt that assertions of executive

privilege are rightly matters of intense public interest." *Dow Jones*, 142 F.3d at 503.  Nor can

there reasonably be any "doubt of the value of public scrutiny of assertions of executive

privilege." *Id.*  While that was true with regard to the executive privilege assertions at issue in

*Dow Jones*, by a sitting president, the public interest in the legal arguments is even stronger here,

where the privilege invoked by a former president lacks the support of a current president and

raises novel constitutional issues.  *See* Exhibit J ("President Biden is not backing Mr. Trump's

attempt to use that power, and many legal scholars and the Justice Department have argued that

he is stretching the narrow executive privilege rights the Supreme Court has said former

presidents may invoke.").  The privilege claim also emerges from a presidential election, a

matter of profound national moment.

Therefore, even with the redaction of any Rule 6(e) information within the order,

briefing, or transcripts that disclose details about proceedings before the grand jury—"'the

identities of witnesses or jurors, the substance of testimony . . . the strategy or direction of the

investigation, the deliberations or questions of jurors, and the like,'" *Dow Jones*, 142 F.3d at

500—much remains of public interest.  The remaining legal arguments about the proper scope of

the executive privilege, and any rulings made by this Court on the legal scope of the privilege

based on those arguments, is of tremendous public and historical importance.  It will also have

"significant ramifications," as *The Times* recently noted:

As the Justice Department investigates both Mr. Trump's attempt to overturn the 2020 election and his retention of sensitive documents at his Florida residence, his legal team has repeatedly claimed that he has retained power to keep information secret, allowing him to block prosecutors from obtaining evidence about his confidential Oval Office communications.

President Biden is not backing Mr. Trump's attempt to use that power, and many legal scholars and the Justice Department have argued that he is stretching the narrow executive privilege rights the Supreme Court has said former presidents may invoke. But there are few definitive legal guideposts in this area, and the fights could have significant ramifications.

In the short term, the disputes could determine whether Mr. Trump is able to use the slow pace of litigation to delay or impede the inquiries. They could also establish new precedents clarifying executive secrecy powers in ways that will shape unforeseen clashes involving future presidents and ex-presidents.

Exhibit J.

The Times therefore respectfully requests that the Court enter an order similar to that in *In re Grand Jury Subpoena*, directing the government to propose appropriate Rule 6(e) redactions, within 14 days, for any dockets, court orders or opinions, legal briefing, or argument transcripts ancillary to the grand jury or juries described herein, including such materials litigating the scope of executive privilege invoked by former President Donald J. Trump or former Trump Administration officials.  2019 U.S. Dist. LEXIS 88421, at *16.

## CONCLUSION

For all of the foregoing reasons, The Times respectfully requests that this Court grant the application and unseal redacted public versions of the documents ancillary to grand jury proceedings described herein.

Dated:  October 21, 2022        Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Chad R. Bowman*
Chad R. Bowman (#484150)
Matthew E. Kelley (#1018126)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
bowmanchad@ballardspahr.com
kelleym@ballardspahr.com

*Counsel for The New York Times Company
and Charlie Savage*