# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE APPLICATION OF THE NEW YORK TIMES COMPANY AND CHARLIE SAVAGE FOR ACCESS TO CERTAIN DOCKETS, ORDERS, LEGAL BRIEFING, AND ARGUMENT TRANSCRIPTS ANCILLARY TO JANUARY 6 GRAND JURY PROCEEDINGS | Miscellaneous Action No. 22-100 (BAH)<br><br>(consolidated with<br>Miscellaneous Action No. 22-104)<br><br>Chief Judge Beryl A. Howell<br><br>REDACTED VERSION |

## MEMORANDUM OPINION

The sealing of judicial decisions and ancillary judicial records relied on to resolve matters pending before the Court is anathema, "reflect[ing] the antipathy of a democratic country to the notion of 'secret law,' inaccessible to those who are governed by that law." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders ("Leopold")*, 964 F.3d 1121, 1127 (D.C. Cir. 2020). Indeed, "the issuance of public opinions is core to the transparency of the court's decisionmaking process," *id.* at 1128 (internal citation omitted), and, as such, is "a fundamental norm of our judicial system: that judges' decisions and their rationales must be available to the public," *id.* at 1130. Public access to judicial records is "'important to maintaining the integrity and legitimacy of an independent Judicial Branch,'" *id.* at 1127 (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017)), and serves "to produce an informed and enlightened public opinion" as well as "to safeguard against any attempt to employ our courts as instruments of persecution, to promote the search for truth, and to assure confidence in judicial remedies," *id.* The courts have long recognized that the press plays a critical role in facilitating public access and acknowledged that "[o]ne of the demands of a democratic society is that the public should know what goes on in courts by being

1

told by the press what happens there, to the end that the public may judge whether our system of criminal justice is fair and right." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 n.9 (1980) (quoting *Maryland v. Baltimore Radio Show, Inc*., 338 U.S. 912, 920 (1950) (Frankfurter, J., dissenting from denial of certiorari)).

At the same time, applicable procedural rules and binding precedent require that public access to judicial records must give way in the face of compelling interests requiring that grand jury material remain out of public view, *perhaps forever*, when unsealing would reveal "a matter occurring before the grand jury," FED. R. CRIM. P. 6(e)(2)(B), except in limited, enumerated circumstances, *id*. at 6(e)(3)(A)–(E). *See Leopold*, 964 F.3d at 1130 (observing that Rule 6(e) "expressly directs secrecy as the default position, and thus displaces the common-law right of access" and "specifies a standard for sealing . . . 'as long as necessary to prevent the unauthorized disclosure of a matter occurring before the grand jury.'"); *see also McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019). Rule 6(e), however, provides no definition of the critical phrase "matter occurring before the grand jury," nor much guidance on the scope of information cloaked by grand jury secrecy, while precedential rulings make clear that scope is far broader than merely transcripts of what actually takes place during a grand jury session.

The pending matter highlights the tension that lies between the important policies underlying grand jury secrecy, as currently codified in Rule 6(e), and "the always strong presumption in favor of public access to judicial proceedings." *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980). The New York Times, its reporter Charlie Savage, Politico, and its reporter Kyle Cheney ("petitioners") have applied for an order authorizing public release of dockets, court opinions and orders, parties' legal briefings, and any hearing transcripts in a specific sealed docket, Case No. 22-gj-25, regarding what petitioners define as "former President

Trump's privilege challenge to the Jan. 6 grand jury investigation." *See* Pets. Politico and Kyle Cheney's Application for Order Allowing Disclosure of All Documents Related to the January 6 Grand Jury Investigation ("Politico Pets.' App.") at 1, ECF No. 1, No. 22-mc-104; *see also* Pets. The New York Times and Charlie Savage's Application for Access to Certain Dockets, Orders, Legal Briefing and Argument Transcripts Ancillary to January 6 Grand Jury Proceedings ("NYT Pets.' App.") at 1, ECF No. 1 (describing the materials as those "regarding the scope of executive privilege invoked by former President Donald J. Trump or former Trump Administration officials").

Petitioners argue that, despite the secrecy required for grand jury matters by Federal Rule of Criminal Procedure 6(e)(2), the significant public interest in the grand jury's current investigation outweighs the need for continued secrecy. *See* Pets. The New York Times and Charlie Savage's Mem. in Supp. of Application for Access to Certain Dockets, Orders, Legal Briefing and Argument Transcripts Ancillary to January 6 Grand Jury Proceedings ("NYT Pets.' Mem.") at 3, ECF No. 1. The government, in a sealed filing, opposes any unsealing of any filings made in the docket for Case No. 22-gj-25, arguing, *inter alia*, that "the government has not confirmed the existence of the investigation, and other parties or witnesses have not admitted to acknowledge[ed] these matters ongoing before the grand jury," and that no unsealing is authorized under Rule 6(e). Gov't's Mem. in Opp'n NYT Appl. (Sealed) ("Gov't's Opp'n (SEALED)") at 2, ECF No. 10.[1]

As explained below, the docket and filings requested by petitioners concern litigation of matters presently before the grand jury and central to its ongoing investigation. Accordingly,

---

[1] The government's sealed opposition memorandum is unsealed to the extent necessary to explain the parameters of the parties' dispute and this Court's reasoning.

Rule 6(e) does not permit such disclosure, at least for now and perhaps forever, and so petitioners' applications are denied.

## I.     BACKGROUND

The relevant factual and procedural background is summarized below.

### A.     Public Reports About Testimony Before the Grand Jury

Following the attack on the U.S. Capitol on January 6, 2021, the press reported on the numerous criminal investigations into those who attacked the U.S. Capitol and who proposed "the creation of alternate slates of pro-Trump electors seeking to overturn Joseph R. Biden Jr.'s victory in the 2020 election," many of whom were lawyers for former president Donald J. Trump.  NYT Pets.' Mem. at 3–4.[2]  According to those press reports, the latter investigations involved grand jury subpoenas for testimony issued to Marc Short, former vice president Michael R. Pence's former chief-of-staff, Greg Jacob, former Vice President Pence's counsel, and other members of the Trump White House.  *Id.* at 4.[3]  Later reporting stated that "[e]xecutive

---

2 

3       Citing Alan Feuer & Maggie Haberman, *Top Pence Aides Testify to Grand Jury in Jan. 6 Investigation*, N.Y. TIMES (July 25, 2022), https://www.nytimes.com/2022/07/25/us/politics/marc-short-pence-jan-6.html (reporting on the Jacob and Short grand jury subpoenas); Maggie Haberman & Luke Broadwater, *Justice Dept. Subpoenas Pat Cipollone, Trump White House Counsel*, N.Y. TIMES (Aug. 2, 2022), https://www.nytimes.com/2022/08/02/us/politics/pat-cipollone-subpoena.html (reporting that a grand jury subpoena was issued to Pat Cipollone, White House Counsel during the relevant time surrounding January 6, 2021); Betsy

privilege took center stage" in the government's investigation after the former president invoked

the privilege to bar subpoenaed witnesses from testifying to communications with him. *Id.* at 5–

6.[4] Those disputes reportedly culminated in "a sealed decision on the scope of the privilege."

*Id.* at 6.[5]

## B.    Pending Press Petitions

On October 18, 2022, Politico and Kyle Cheney, Senior Legal Affairs Reporter for

Politico, submitted by letter an application to unseal all documents related to, what they describe

as "the ongoing grand jury proceedings stemming from the January 6, 2021 attack on the

Capitol." *See* Politico Pets.' App. at 1.  Specifically, they "seek the public disclosure" of the

following from Case No. 22-gj-25: "1) Former president Trump's June 10, 2022 action (and any

associated briefs) related to two grand jury subpoenas: 22-GJ-060991378 and 22-GJ-06991380;

2) Any response by the government to this challenge; 3) Any additional replies by former

president Trump; and 4) The court's September 28, 2022 order adjudicating this challenge." *Id.*

As grounds for their unsealing request, petitioners argue that the ruling in this case is "historic"

---

Woodruff Swan, *Justice Department Subpoenas Trump White House Lawyer Eric Herschmann*, POLITICO (Aug. 15, 2022), https://www.politico.com/news/2022/08/15/justice-department-subpoenas-trump-lawyer-eric-herschmann-00051899 (reporting that a grand jury subpoena was issued to Eric Herschmann, a lawyer in the Trump White House); Spencer S. Hsu, *Trump White House Counsel Cipollone Appears Before Jan. 6 Grand Jury*, WASH. POST (Sept. 2, 2022), https://www.washingtonpost.com/dc-md-va/2022/09/02/cipollone-philbin-jan6-grand-jury (reporting that Cipollone and the Deputy White House Counsel Pat Philbin appeared before the grand jury); Glenn Thrush et al., *Justice Dept. Issues 40 Subpoenas in a Week, Expanding Its Jan. 6 Inquiry*, N.Y. TIMES (Sept. 12, 2022), https://www.nytimes.com/2022/09/12/us/politics/trump-aides-jan-6-doj.html (reporting that the government issued "about 40 subpoenas" to Trump aides).

[4]     Citing Maggie Haberman & Glenn Thrush, *Trump's Team of Lawyers Marked by Infighting and Possible Legal Troubles of Its Own*, N.Y. TIMES (Sept. 16, 2022), https://www.nytimes.com/2022/09/16/us/politics/trump-lawyers-herschmann.html (reporting that Herschmann received instruction from the former president to withhold grand jury testimony because of executive privilege); Charlie Savage & Glenn Thrush, *Jan. 6 and Mar-a-Lago Inquiries Converge in Fights Over Executive Privilege*, N.Y. TIMES (Sept. 30, 2022), https://www.nytimes.com/2022/09/30/us/politics/trump-executive-privilege.html (reporting that a sealed hearing was held regarding the former president's executive privilege assertion).

[5]     Citing Spencer S. Hsu et al., *Judge Bucks Trump, Orders Pence Aide to Testify to Jan. 6 Grand Jury*, Wash. Post (Oct. 14, 2022), https://www.washingtonpost.com/dc-md-va/2022/10/14/marc-short-grand-jury-testify-pence-trump/.

and "bears on the ability of former presidents to control, and even silence, ex-advisers in matters of urgent national significance," thus justifying disclosure.  *Id.*  They advocate for unsealing of these records "with redactions as needed to protect the privacy interests of named individuals and to address the Justice Department's criminal investigative prerogatives," which are separate and distinct, they argue, from "the court's reasoning and breadth of its September 28, 2022 ruling." *Id.*

On October 25, 2022, the New York Times and journalist Charlie Savage filed a similar application for access to materials "ancillary" to grand jury proceedings involving former President Trump.  *See* NYT Pets.' App.  Specifically, these petitioners request access to "redacted versions of any dockets, court opinions or orders, legal briefing, and argument transcripts ancillary to the grand jury investigation, including such materials regarding the scope of executive privilege invoked by former President Donald J. Trump or former Trump Administration officials," NYT Pets.' Mem. at 3, to reveal "legal arguments about the proper scope of the executive privilege," which are "of tremendous public and historical importance," *id.* at 8.  To support their request, these petitioners argue that the intense public interest present here, where "a former president lacks the support of a current president" and the "novel constitutional issues" raised incident to "a presidential election, a matter of profound national moment," merit public disclosure, even with redactions.  *Id.*

After reviewing both applications, on October 26, 2022, this Court ordered that a new miscellaneous case number and separate docket be assigned to each application, consolidated the cases, and issued a scheduling order for briefing.  *See* Min. Order (Oct. 26, 2022).  The government opposed petitioners' applications on November 15, 2022, which the Court permitted to be filed *ex parte* and under seal, *see* Gov't Opp'n (SEALED), ECF No. 10; *see also* Order

Granting in Part & Denying in Part Gov't's Mot. Leave File Document Under Seal, ECF No. 9; Gov't's Notice of Filing, ECF No. 8.

Given that the entirety of the government's opposition was filed under seal and *ex parte*, thus adversely impacting the adversarial process, the Court requested supplemental briefing intended to provide additional transparency to petitioners regarding the legal issues implicated in resolving their petitions. Specifically, the parties were directed to submit supplemental briefs addressing two questions: "(1) The Court's authority to unseal judicial opinions, in whole or in part, related to grand jury investigations, whether ongoing or closed, under either Federal Rule of Criminal Procedure 6 or Local Criminal Rule 6.1" in light of the D.C. Circuit's holding in *McKeever*, restricting grand jury disclosures to those listed in Federal Rule of Criminal Procedure 6(e)(3)(E); and (2) how to reconcile that authority, if any, "with the D.C. Circuit's routine unsealing, at least in part, of judicial opinions related to ongoing grand jury investigations" given that "petitioners seek a specific judicial decision, and related submissions, in connection with a publicly announced Special Counsel investigation" and the ironic potential result that "judicial decisions arising from grand jury matters garnering little to no press attention may necessitate fewer redactions to preserve grand jury secrecy than those judicial decisions arising from grand jury matters subject to intense press attention such that the latter decisions may not be released by the Court at all." Min. Order (Feb. 7, 2023). The parties timely submitted their supplemental responsive briefs. *See* Gov't's Supp. Br. in Resp. Court's Feb. 7, 2023 Order ("Gov't's Supp. Br."), ECF No. 11; Pets.' Supp. Br. in Resp. Court's Feb. 7, 2023 Order ("Pets.' Supp. Br."), ECF No. 12. The pending applications are now ripe for review.

### C.     The Government's Public Acknowledgment of the Investigation

After the filing of petitioners' applications and the government's opposition, on November 18, 2022, Attorney General Merrick Garland announced the appointment of Jack

Smith as Special Counsel to oversee two ongoing criminal investigations. *See* Order No. 5559-2022, U.S. Dep't of Justice, Appointment of John L. Smith as Special Counsel (Nov. 18, 2022), https://www.justice.gov/opa/press-release/file/1552896/download. The first investigation, "as described in court filings in the District of Columbia," concerns "whether any person or entity unlawfully interfered with the transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021." Press Release, U.S. Dep't of Justice, Appointment of a Special Counsel (Nov. 18, 2022),

https://www.justice.gov/opa/pr/appointment-special-counsel-0. The second ongoing investigation concerns "classified documents and other presidential records, as well as the possible obstruction of that investigation, referenced and described in court filings submitted in a pending matter in the Southern District of Florida." *Id.* The Attorney General stated that his decision was supported by "recent developments," including the launch of Trump's candidacy in the 2024 presidential election and President Biden's "intention to be a candidate as well." *Id.* The decision was also meant to "underscore[] [DOJ]'s commitment to both independence and accountability in particularly sensitive matters." *Id.*

Approximately one month later, the Court, following consultation with the government, publicly released, with redactions, two decisions issued on June 27, 2022, and September 27, 2022, respectively, in connection with the execution of search warrants on various email accounts. *See Matter of Search of Info. Associated with Two Accounts Stored at Premises Controlled by Google LLC*, No. 22-gj-28, 2022 U.S. Dist. LEXIS 237972 (D.D.C. Dec. 15, 2022). Both opinions involved the release of certain emails and associated attachments derived from the warrants' returns to the government's investigative team after the government's filter team reviewed them for attorney-client privilege and work-product privilege protections "as part

8

of an ongoing grand jury investigation." *Id.*, Att. A at \*3.[6] The press has also reported on release of those redacted decisions.[7]

## II.    DISCUSSION

Outlined first are the legal guideposts to navigate in determining whether unsealing is appropriate, followed by an application of those guideposts to the instant applications.

### A.    Legal Landscape

#### 1.    *Policies Underlying Grand Jury Secrecy*

The grand jury has a "unique role in our criminal justice system." *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991). "[E]nshrined in the Constitution," that role is to "'determin[e] if there is probable cause" to support criminal charges and to "protect[] citizens against unfounded criminal prosecutions,'" *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 423 (1983) (*Branzburg v. Hayes*, 408 U.S. 665, 686–87 (1972)); *see also* U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]").  Central to that duty is the secrecy required of grand jury matters mandated by Federal Rule of Criminal Procedure 6(e), which states that grand

---

[6]    Search warrants, issued pursuant to Federal Rule of Criminal Procedure 41 and/or the Stored Communications Act, 18 U.S.C. § 2703(a), (c)(1)(A), are not subject to Rule 6(e), even when the warrant is issued to obtain evidence as part of an ongoing grand jury investigation, though the fact that specific warrant returns (*i.e.*, evidence seized by the government in execution of the warrant) were submitted to the grand jury is cloaked with the protection of Rule 6(e). Search warrants and associated judicial records remain under seal during covert stages of an investigation, but when a warrant is disclosed, for example, to an email account holder, the necessity for sealing is obviated, at least in part.  Public access to warrants and associated judicial records is generally governed by the balancing of factors set out in *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980).  *See, e.g.*, *In re L.A. Times Commc'ns. LLC to Unseal Court Records*, No. 21-mc-16 (BAH), 2022 WL 3714289 (D.D.C. Aug. 29, 2022) (applying the *Hubbard* factors to direct the unsealing of a redacted search warrant and its accompanying materials in closed investigation into allegations of insider training and securities fraud by a U.S. Senator).

[7]    *See, e.g.*, Jared Gans, *Feds Have Gained Access to Emails from Trump Allies, Perry, Eastman, Unsealed Order Reveals*, THE HILL (Dec. 16, 2022), https://thehill.com/regulation/court-battles/3778498-feds-have-gained-access-to-emails-from-trump-allies-perry-eastman-unsealed-order-reveals/; Kyle Cheney et al., *Judge Unseals New Details of Contacts Among Rep. Perry, Trump-Connected Attorneys*, POLITICO (Dec. 16, 2022), https://www.politico.com/amp/news/2022/12/16/trump-connected-attorneys-sought-to-shield-their-communications-from-prosecutors-judge-reveals-00074379.

jurors, interpreters, court reporters, operators of recording devices, individuals who transcribe recorded testimony, attorneys for the government, and those permitted to make approved disclosures under the Rule "must not disclose a matter occurring before the grand jury," FED. R. CRIM. P. 6(e)(2)(B), or risk contempt of court, *id.* 6(e)(7).

Grand jury secrecy is necessary to ensure that witnesses may testify "fully and frankly," without the knowledge of the persons against whom the witnesses are testifying and fear of potential retribution; that individuals investigated and later exonerated need not "be held up to public ridicule[;]" and that targets of potential criminal charges do not obstruct an ongoing government investigation, whether by influencing grand jurors, fleeing, or destroying evidence. *See Sells*, 463 U.S. at 424 (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218–19 (1979)). For all these critical policy and practical reasons, "'privacy and secrecy are the norm'" in the grand jury context. *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1150 (D.C. Cir. 2006) (quoting *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000)).

A grand jury's investigation is guided by prosecutors, not the judiciary. As an "institution separate from the courts," the grand jury is kept "at arm's length" from courts. *United States v. Williams*, 504 U.S. 36, 47 (1992). The comparative roles of the prosecutors and the judiciary in the grand jury process makes determinations of what information constitutes grand jury material heavily dependent on, with significant deference appropriately given to, the assessment made by government prosecutors. *See Leopold*, 964 F.3d at 1133 (noting, in the context of unsealing certain types of government investigative applications, that "the district court can generally leave it to the government to decide in good faith when investigations are truly closed, taking into account related cases that could be damaged by premature disclosure of

surveillance and particular difficulties that could arise if the lawyers involved have left the government").

In this District, for example, the Chief Judge empanels grand juries and excuses jurors who can no longer serve for the duration of the grand jury's term, *see* D.D.C. LCvR 40.7(b); D.D.C. LCrR 57.14(b), but as the quorum of sixteen to twenty-three grand jurors hear testimony and review documents presented by prosecutors and transcribed by a court reporter, "[n]o judge presides and none is present" in the grand jury room, *In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 498 (D.C. Cir. 1998). Courts are neither aware nor kept apprised of what goes on before the grand jury, what evidence is presented, or the nature and progression of any pending investigation, except in instances when called upon to resolve an issue stymieing the grand jury's investigation. In those instances, a court's involvement is generally limited, for example, to resolving disputes over a witness's motion to postpone testimony or quash a subpoena; deciding whether grand jury testimony was rightly withheld based on a testimonial privilege; granting a witness immunity from self-incrimination, ensuring that material witnesses appear when required; compelling compliance with a grand jury demand for testimony or documents; and imposing sanctions for contempt. *See id.* Whether at a hearing or by written opinion and order, those judicial decisions and proceedings are largely conducted privately under seal, in compliance with Rule 6(e)'s secrecy requirement, despite the fact that "[p]roviding public access to judicial records is the duty and responsibility of the Judicial Branch." *Leopold*, 964 F.3d at 1134.

As a result, decisions implicating novel issues, significant historical events, and nationally known individuals and entities—for instance, interpreting the contours of constitutional rights and testimonial privileges asserted by political figures—are known only to

the witnesses and/or privilege holders raising the issues and are withheld from the public. Even parties litigating similar disputes and judges deciding them will not have access, at least immediately, to certain decisions and legal reasoning because of the secrecy Rule 6(e) demands.

### 2.   *Rule 6(e)'s Scope*

Given that reality, when presented with a request to unseal judicial decisions in grand jury proceedings, courts first face the mixed legal and factual question of whether Rule 6(e) and binding precedent permit that disclosure. Rule 6(e)(3) lists specific exceptions to grand jury secrecy, allowing, for example, government attorneys to disclose grand jury information to another federal grand jury, as well as to state, Indian tribes, or foreign governments when "necessary to assist in performing that attorney's duty to enforce federal criminal law," *see* FED. R. CRIM. P. 6(e)(3)(A)(ii), (C), and, when grand jury matters involve foreign intelligence or counterintelligence information, to federal law enforcement or national security officials, *id.* 6(e)(3)(D), with required notice to—but not permission from—the court in certain circumstances. This disclosure authority is well-used, with regular notices submitted to the Court of such disclosures.[8] In other words, these exceptions actually permit fairly broad dissemination of grand jury material to government personnel, but at the discretion of prosecutors, subject to meeting certain conditions. In addition, the exceptions allow disclosure of grand jury material, with the Court's permission, "preliminarily to or in connection with a judicial proceeding," *id.* 6(e)(3)(E)(i), which may include in a foreign court, *id.* 6(e)(3)(E)(iii), and to Indian tribal, state, U.S. military or foreign government officials, *id.* 6(e)(3)(E)(iv), (v),

---

[8]      In March 2016, this Court instituted a system for docketing such notices received in this District, and since that time the government has submitted 2,075 notice letters, each of which may list disclosures of grand jury material to multiple people. *See In re Application of Comm. on Judiciary, U.S. House of Reps.*, 414 F. Supp. 3d 129, 147 n.12 (D.D.C. 2019) (totaling 783 notice letters submitted by the government from 2016 to 2019); *In re Grand Jury Disclosures*, No. 20-gj-1 (D.D.C. 2020) (241 notices); *In re Grand Jury Disclosures*, No. 21-gj-1 (D.D.C. 2021) (633 notices); *In re Grand Jury Disclosures*, No. 22-gj-1 (D.D.C. 2022) (418 notices).

and to a defendant, upon a showing of "a ground . . . to dismiss the indictment because of a matter that occurred before the grand jury," *id*. 6(e)(3)(E)(ii).

Notably, the rule provides no express exemption for public disclosure of judicial decisions stemming from grand jury matters that necessarily may contain reference to "a matter occurring before the grand jury." *Id*. 6(e)(2)(B). At the same time, the listing of "persons" who "must not disclose" grand jury matters, in Rule 6(e)(2)(B), includes neither the courts nor grand jury witnesses. *See id.* 6(e)(2)(B). Consequently, grand jury witnesses are not subject to the secrecy requirements of Rule 6(e). *See In re Investigation Before April 1975 Grand Jury*, 531 F.2d 600, 605–08 (D.C. Cir. 1976); *see also* FED. R. CRIM. P. 6(e), Notes of Advisory Committee on Rules (1944), Note 2 to Subdivision (e) ("The rule does not impose any obligation of secrecy on witnesses. The existing practice on this point varies among the districts. The seal of secrecy on witnesses seems an unnecessary hardship and may lead to injustice if a witness is not permitted to make a disclosure to counsel or to an associate.").

The absence of any reference to the courts on the list of those persons subject to grand jury secrecy was generally viewed as confirmation of judges' inherent authority to release judicial decisions, and ancillary filings, in appropriate circumstances. *See generally In re Craig*, 131 F.3d 99, 103 (2d Cir. 1997); *Carlson v. United States*, 837 F.3d 753, 763 (7th Cir. 2016). That construction of Rule 6(e) was firmly rejected, however, in *McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019), where the D.C. Circuit held that the district court lacked inherent authority to disclose historically significant grand jury matters, from sixty years earlier, when the Rule did not expressly allow such disclosure. In *McKeever*, a historian petitioned the district court for release of records from a 1957 grand jury investigation into the disappearance of a Columbia University professor, a critic of Dominican Republic dictator Rafael Trujillo, who reportedly had

13

the professor kidnapped and then murdered.  *See* 920 F.3d at 843–44.  After reviewing the values

of grand jury secrecy and the tenet that "disclosure of matters occurring before the grand jury is

the exception and not the rule," *id.* at 844 (citing *Fund of Const. Gov't v. Nat'l Archives & Recs.*

*Serv.*, 656 F.2d 856, 868 (D.C. Cir. 1981)), the Circuit read the listed exceptions to grand jury

secrecy in Rule 6(e)(3)(E) as "exhaustive" and that, unless one of those specific exceptions

applies, the Rule "explicitly require[s] secrecy in all other circumstances," *McKeever*, 920 F.3d

at 845.  Despite the fact that the materials sought to be unsealed in *McKeever* were focused on

uncovering why the government chose to bring only certain charges against a former federal

agent and CIA lawyer employed by Trujillo but not charges relating to the disappearance and

murder of the professor, in an investigation closed over sixty years before, and involving

individuals since deceased, *see id.* at 843–44, 849, the Circuit concluded that the requested

unsealing was not allowed under Rule 6(e), *see id.* at 850.

 With that interpretation of the Rule, the Circuit foreclosed the argument that district

courts have inherent authority to disclose grand jury matters outside of the enumerated

exceptions, explaining that, first, the Rule 6(e)(3)(E) exceptions are very specific and "the

product of a carefully considered policy judgment" by the Supreme Court and Congress.  *Id.* at

845.  Second, the text of Rule 6(e)(3) does not suggest any inherent authority through the use of

"including" before the enumerated exceptions or a residual exception.  *Id.*  Third, permitting

district courts to fashion exceptions would render Rule 6(e)(3)(E)'s list "merely precatory" and

authorize circumvention of a Federal Rule of Criminal Procedure.  *Id.* at 845–46.  Finally, the

Circuit cited Supreme Court and its own precedent supporting a narrow interpretation of the

exceptions to grand jury secrecy.  *Id.* at 846–47.

Unfortunately, *McKeever* does not clear all confusion regarding a district court's authority to disclose grand jury materials.[9]  For instance, as discussed, Rule 6(e)(2) does not include the court as an entity that must adhere to grand jury secrecy, so the text of the Rule does not explicitly forbid a district court from releasing grand jury material, *see* FED. R. CRIM. P. 6(e)(2)(B), but now *McKeever* does.

In a similar vein, *McKeever* does not address Rule 6(e)(6), which states that "orders . . . relating to grand-jury proceedings must be kept under seal *to the extent and as long as necessary* to prevent the unauthorized disclosure of a matter occurring before the grand jury."  *Id.* 6(e)(6) (emphasis added).  That provision permits a district court to unseal grand jury orders once secrecy is no longer deemed "necessary" to protect unauthorized disclosure of grand jury matters, yet without inherent authority to disclose grand jury materials, how district courts are to evaluate when sealing is no longer "necessary" remains a puzzle—except when prosecutors alert the court that based on the status of, or events related to, the criminal investigation, grand jury matters may be unsealed.  For example, if sealing remained "necessary" for the historically significant grand jury materials at issue in *McKeever*, even though those materials were over sixty years old, the grand jury investigation was long closed, and all the relevant people involved were deceased, that appears to be a nearly impossible standard to satisfy, at least in the face of

---

[9]    While the U.S. Department of Justice ("DOJ"), Civil Division, Federal Programs Branch, is a vigorous proponent of the interpretation of Rule 6 adopted in *McKeever*, the current version of Rule 6(e), as construed by *McKeever*, does not fully accommodate the investigative and prosecutorial needs of other components of DOJ. *See, e.g.*, *In re Capitol Breach Grand Jury Investigations Within the District of Columbia*, 339 F.R.D. 1 (D.D.C. 2021) (denying government's request to disclose grand jury matters and related grand jury materials to an independent contractor to incorporate into a database of multi-sourced evidence derived from the investigation into the attack on the U.S. Capitol on January 6, 2021, upon finding that such disclosure of grand jury material fell outside of any enumerated exception to grand jury secrecy in Rule 6(e)); *In re Application of U.S.A. for an Order Pursuant to 28 U.S.C. § 1651(a)*, No. 19-wr-10 (BAH), 2019 U.S. Dist. LEXIS 163505, at *10 (D.D.C. Aug. 6, 2019) (denying government's application, under the All Writs Act, 28 U.S.C. § 1651(a), for a gag order on recipients of a grand jury subpoena, when witnesses were otherwise under no secrecy obligation per Rule 6(e) or other express statutory authority, and describing government's changing position on whether Rule 6(e) permits exceptions to grand jury secrecy not specifically enumerated in the Rule 6(e)).

15

DOJ or prosecutors' opposition to disclosure.  As construed in *McKeever*, Rule 6(e) effectively empowers prosecutors to exercise an even more rigorous gatekeeper role than deference already requires for public disclosure of grand jury material, with a concomitant reduction in the ability of the public to scrutinize government activities at this critical stage of criminal investigations. *Cf. In re L.A. Times Commc'ns. LLC to Unseal Court Records*, No. 21-mc-16 (BAH), 2022 WL 3714289, at *7 (D.D.C. Aug. 29, 2022) (acknowledging that unsealing of search warrant materials would "shin[e] a light on the Government's investigation of political corruption" and "provide the public an opportunity to evaluate the basis upon which the search was authorized in the first place, . . . which in turn would inform the public's understanding of whether the government had the evidence but nevertheless pulled its punches" (internal quotations and citations omitted)).

    *McKeever* separately did not address the wide range of materials that result from grand jury proceedings.  For example, the *McKeever* majority references that Rule 6(e) only refers to records solely in the government's custody, such as grand jury testimony transcripts, *see* 920 F.3d at 848, but that does not account for key documents relevant to grand jury proceedings in the court's possession—judicial opinions, orders, and underlying filings considered in making those judicial decisions.  While recognizing that a "matter occurring before the grand jury" does not necessarily refer to a "judicial record," which "assumes a judicial decision," *id.,* the *McKeever* majority did not grapple with the reality that a judicial decision resolving a grand jury matter must necessarily apply relevant legal principles to the facts gained from the grand jury's investigation, which facts *McKeever* expressly holds may not be disclosed unless a Rule 6(e)(3) exception applies.

### 3.     *Unsealing Grand Jury Decisions, In Practice*

Both this Court and the D.C. Circuit routinely unseal opinions from grand jury proceedings and, at the district court level with which this Court is familiar, such unsealing is conducted after necessary consultation with the government, *see supra* Part II.A.1, to redact text that discloses a "matter occurring before the grand jury," while providing public access to the applicable law and legal analysis.  *See, e.g.*, *In re Grand Jury Investigation*, 916 F.3d 1047 (D.C. Cir. 2019) (affirming district court's denial of Andrew Miller's motion to quash grand jury subpoena issued by Special Counsel Robert Mueller III to provide testimony and documents to the grand jury as part of an investigation into Russian interference with the 2016 presidential election, and related matters, and rejecting witness's argument that the Special Counsel lacked authority to issue the subpoenas as his appointment violated the Appointments Clause, *see* U.S. CONST. art. II, § 2, cl. 2); *In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019) (affirming district court's grant of government's motion to compel enforcement with grand jury subpoenas in unsealed and lightly redacted opinion); *In re Grand Jury Subpoena*, 912 F.3d 623 (D.C. Cir. 2019) (affirming contempt order after corporation failed to comply with grand jury subpoena in redacted opinion).  Indeed, the D.C. Circuit has "said that '[t]he disclosure of information coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury is not prohibited.'"  *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1002 (D.C. Cir. 1999) (quoting *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987))).

That is easier said in theory than in practice, without the "wiggle room" for unsealing grand jury matters that inherent authority provided and *McKeever* foreclosed.  As the government concedes, "in the broadest sense, all judicial opinions resulting from a grand jury

matter arguably reflect something that happened before the grand jury." Gov't's Supp. Br. at 3. Even using a scalpel to excise information to avoid "revelation" of "a matter occurring before the grand jury" may be insufficiently precise to accomplish that task when the rationale for a judicial decision is integrally intertwined with the facts. *See id.* at 3–4 (government acknowledging that "*McKeever* did not consider the contours of a district court's ability to unseal judicial records ancillary to, and non-revelatory of, grand jury proceedings," but nonetheless speculating that "it may be possible to disclose some portions of the opinion without revealing such information"); *see also Dow Jones*, 142 F.3d at 505 (observing that "sometimes 'redaction is simply not possible'" (quoting *In re North*, 16 F.3d 1234, 1242 (D.C. Cir. 1994))).

Aside from mandating that a "matter occurring before the grand jury" must not be disclosed, Rule 6(e) provides no definition of what that phrase means, so courts have provided their own definition, which even the government concedes is inexact and largely fact dependent. *See* Gov't's Supp. Br. at 4–5. Precedent dictates that grand jury matters include "not only what has occurred and what is occurring, but also what is likely to occur" in the grand jury's investigation, "'the identities of witnesses or jurors, the substance of testimony' as well as actual transcripts, 'the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'" *Dow Jones*, 142 F.3d at 499–500 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980)). That broad definition does not "draw 'a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury.'" *Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 73 (D.C. Cir. 2018) (quoting *Labow v. Dep't of Justice*, 831 F.3d 523, 529 (D.C. Cir. 2016)); *see also supra* n.6. "'[T]he disclosure of information coincidentally before the grand jury which can be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury is not prohibited.'" *In re Sealed Case*

*No. 99-3091*, 192 F.3d at 1001–02 (quoting *Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 582) (formatting modified). Thus, "a matter occurring before the grand jury" must "reveal some secret aspect of the grand jury's investigation" that has yet to be revealed elsewhere. *Bartko*, 898 F.3d at 73 (quoting *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013)).

The unsealing of judicial decisions, even with redactions to protect grand jury matters, aligns with the public's "'general right to inspect and copy public records and documents, including judicial records and decisions.'" *Leopold*, 964 F.3d at 1127 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)); *see also Cable News Network, Inc. v. FBI*, 984 F.3d 114, 118 (D.C. Cir. 2021) (referring to access to judicial records as "fundamental"); *United States v. El-Sayegh*, 131 F.3d 158, 161–62 (D.C. Cir. 1997) ("The common law right of access to judicial records antedates the Constitution."); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. at 597–98 ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." (footnotes omitted)).[10] Still, the secrecy required of grand jury proceedings in Rule 6(e) is "unique" and "displaces the common-law right of access." *Leopold* at 1132–33; *see also Dow Jones*, 142 F.3d at 504 ("Although some have identified a common law tradition of public access to criminal trials, this never extended to preindictment, pretrial proceedings involving a grand jury.").

Thus, to accommodate the important interests of public access and grand jury secrecy, in practice, upon issuance of decisions in grand jury matters, this Court typically directs the

---

[10]    The Supreme Court expressed a similar aversion to secret law in the context of the Freedom of Information Act ("FOIA"), holding that a FOIA exemption requiring "disclosure of all opinions and interpretations which embody the agency's effective law and policy" represents "a strong congressional aversion to secret (agency) law" and "an affirmative congressional purpose to require disclosure of documents which have the force and effect of law." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (internal citations omitted). The D.C. Circuit has agreed. *See, e.g.*, *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 7–9 (D.C. Cir. 2014) (summarizing Circuit precedent that various agency memoranda constituted "working law" justifying public disclosure under a FOIA exemption to avoid agencies' development of any "body of secret law").

government to advise, at specific time intervals, when the decision may be unsealed, in whole or in part. As already explained, because courts are not made aware of the full scope of materials presented to the grand jury and therefore are not best positioned to execute redactions, reliance on and deference to the government is necessary. In instances when the grand jury witness or privilege holder has been involved in the litigation arising from a grand jury investigation, this Court has disclosed opinions through a multistep procedure. First, the Court issues a sealed order resolving the dispute that is disclosed to the government and witness (and/or privilege holder), without reference to any grand jury information. Second, simultaneously with the order, the Court issues a sealed and *ex parte* memorandum opinion to the government explaining the reason for the order, accompanied by an order directing the government, generally within 24 hours, to propose redactions, in accordance with Rule 6(e)(2), for the Court's review, in order that the memorandum opinion, in whole or part, may be disclosed to the witness (and/or privilege holder). Third, upon review and approval of the proposed redactions, the usually partially redacted, but still otherwise sealed, opinion is disclosed to the witness (and/or privilege holder).[11] Ultimately, when the judicial decision may be released publicly, in whole or in part, the opinion is then published on the Court's website for the public to view.[12]

---

[11]     To the extent that the redacted judicial decision has been released to a witness or privilege holder, who may be subject to a protective order prohibiting public disclosure of the sealed litigation, the decision has arguably been moved outside of the grand jury arena by release to individuals not bound to secrecy under Rule 6(e)(2)(B). *Cf. In re North*, 16 F.3d at 1244 (noting that court had permitted Independent Counsel's report to be inspected by "persons named therein," in considering whether grand jury material contained in report "has already lost its protected character"). The government, however, does not address whether that factual scenario justifies release to the public.

[12]     The part of the Court's website dedicated to providing public access to unsealed or partially unsealed decisions in sealed cases was instituted by then-Chief Judge Royce C. Lamberth in May 2013. *See* GRAND JURY, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, https://www.dcd.uscourts.gov/unsealed-orders-opinions-documents/Grand%20Jury (last visited Feb. 22, 2023); *see* Memorandum & Order, *United States v. E-Mail Account Redacted@Gmail.Com on Computer Servers Operated by Google, Inc., Headquartered at 1600 Amphitheatre Parkway, Mountain View, Cal.*, No. 10-mj-291, ECF No. 25.

**4.    *Considerations in Unsealing Decisions Ancillary to Grand Jury Matters***

All that said, the key question remains: When confronted, as here, with a request to release judicial opinions, and associated filings, ancillary to grand jury proceedings, what can a court do?  The answer depends on the factual context.  When grand jury matters have already been disclosed to the public, they are no longer secret and thus may be released—notwithstanding that no enumerated Rule 6(e) exception so states but the government would be hard-pressed in that circumstance to argue that sealing was "necessary" under Rule 6(e)(6).  *See, e.g.*, *Dow Jones*, 142 F.3d at 505; *In re North*, 16 F.3d at 1245 ("There must come a time, however, when information is sufficiently widely known that it has lost its character as Rule 6(e) material.  The purpose in Rule 6(e) is to preserve secrecy.  Information widely known is not secret.").

In assessing whether prior disclosures of grand jury materials support further unsealing, who makes the disclosures matters.  For instance, precedent and practice counsel against any unsealing when statements about an ongoing grand jury investigation made in the press are not directly attributed to the government, grand jury witnesses, or targets.  *Cf. In re Grand Jury Subpoena, Judith Miller*, 493 F.3d at 154–55 (unsealing for public release portion of judicial opinions and underlying affidavits that discuss grand jury matters revealed either "during [a] trial or by grand jury witnesses themselves," explaining that "one can safely assume that the 'cat is out of the bag' when a grand jury witness . . . discusses his role on the CBS Evening News"); *In re North*, 16 F.3d at 1244–45 (finding public release appropriate of Independent Counsel report containing grand jury material since "the Rule 6(e) material was given currency among the extended community of persons named in the Report and ultimately became part of the media accounts," such that the "information is sufficiently widely known that it has lost its character as

Rule 6(e) material").  Absent such reliable, credible, and authoritative disclosures of grand jury

matters, Rule 6(e) protections remain intact.  *See Barry v. United States*, 740 F. Supp. 888, 891

(D.D.C. 1990) ("Rule 6(e) does not create a type of secrecy which is waived once public

disclosure occurs.").

Another important contextual consideration pertinent to release of a judicial decision and

associated filings ancillary to a grand jury matter is whether grand jury material may be

sufficiently excised through redactions to avoid revealing "a matter occurring before the grand

jury" subject to Rule 6(e) protection.  Such extensive redactions may be necessary that any

released portions of a judicial decision may be either unintelligible or misleading as to the

reasons for the conclusions reached.  Those circumstances militate strongly against public

release.

Likewise, even were redaction of grand jury material possible, as the government

recognizes, "the degree of attention paid to a matter may affect whether disclosure of a particular

piece of information would reveal a matter occurring before the grand jury."  Gov't's Supp. Br.

at 4.  For example, release of a judicial decision resolving an issue arising from a grand jury

investigation in response to media requests predicated on general leaks may serve only to fill

gaps in public reporting and thus violate Rule 6(e)(2).  *See In re North*, 16 F.3d at 1245 ("[I]t is

commonly said that when the media reports information alleged to be grand jury material, the

government is obligated to stand silent and not confirm the information, whether it is accurate or

not." (internal citation omitted)).  In comparison, in grand jury matters generating little to no

public reporting about the investigation, redacted opinions and materials can properly protect

secret grand jury information because their release does not add to a growing body of knowledge

about an ongoing investigation.  The ironic result, then, is that materials from grand jury matters

of intense public interest generating concomitant media attention may have to remain entirely

sealed in the name of grand jury secrecy while matters not regularly in national news cycles may

be released with only light redactions, perhaps limited to blocking the names of witnesses and

targets.  The government concedes as much.  *See* Gov't's Supp. at 5 ("Where an alleged matter

ancillary to an alleged grand jury investigation has been the subject of significant speculation or

reporting in the press, it may not be possible to unseal any portion of requested materials without

violating Rule 6(e)." (footnote omitted)).

The result is that judicial decisions and other records in a grand jury investigation of

significant public interest and national importance may remain under seal for years, if not

forever.[13]

***

Those legal guideposts and considerations make apparent that the public release of

judicial decisions resolving legal issues raised in ongoing grand jury proceedings—or of any

other grand jury material in even long-closed criminal investigative matters—is no trivial matter.

The Judicial Conference's Committee on Rules of Practice and Procedure and its Advisory Rules

Committees can provide any clarification, expiration date on sealing, or authority to consider the

significant public interest in disclosure of judicial decisions through their regular review of the

---

[13]     For example, in 2018, a petition was filed before this Court seeking full disclosure of the impeachment referral report known as the "Road Map" that the Watergate grand jury transmitted to the House Judiciary Committee in 1974, over forty years earlier.  Pet. for Order Directing Release of the "Road Map" Transmitted by the Watergate Grand Jury to the House Judiciary Committee in 1974, No. 18-mc-125 (BAH), ECF No. 1.  While portions of the Watergate Road Map already in the public domain were then ordered to be made publicly available, *see* Gov't's Notice of Compliance, No. 18-mc-125 (BAH), ECF No. 14, the petition was voluntarily dismissed, *see* Pets.' Notice of Dismissal, No. 18-mc-125 (BAH), ECF No. 16, post-*McKeever*, which indisputably foreclosed any inherent authority of the Court to consider further public disclosure.  Thus, despite its national significance, the full Watergate Road Map remains under seal.

Federal Rules of Criminal Procedure.[14] That was the advice of Justice Breyer in his statement

accompanying the Supreme Court's denial of certiorari following petitioner's appeal of

*McKeever*. In addressing the circuit split regarding whether courts have inherent authority to

disclose grand jury materials outside any Rule 6(e)(3) exception or in historically significant

matters, Justice Breyer described that question as "important" and "one [he] think[s] the Rules

Committee both can and should revisit." *McKeever v. Barr*, 140 S. Ct. 597, 598 (2020) (Mem.)

(Breyer, J.).[15]

The Advisory Committee on Criminal Rules ("Advisory Committee") to the Judicial

Conference Committee on Rules of Practice and Procedure disagrees. At a November 4, 2021,

meeting, the Advisory Committee rejected proposed amendments to Rule 6(e) that would have

provided an exception to grand jury secrecy "to allow the release of materials of special

historical or public interest." Comm. on Rules of Practice and Procedure, Standing Comm.

Agenda Book (Jan. 4, 2022) at 259, U.S. COURTS, Tab 6A, Memorandum from Hon. Raymond

M. Kethledge, Chair, Advisory Comm., to Hon. John D. Bates, Chair, Comm. on Rules of

Practice and Procedure, dated Dec. 14, 2021, "Report of the Advisory Committee on Crim.

---

[14]     The Advisory Committee has passed on prior opportunities to make such modifications to Rule 6(e). *See In re Application of U.S.A. for an Order Pursuant to 28 U.S.C. § 1651(a)*, 2019 U.S. Dist. LEXIS 163505, at *10 n.4 (explaining the Advisory Committee's choice, in 2012, to decline an amendment to Rule 6(e) that would have established procedures for the release of historically significant grand jury materials because the Committee believed at the time that, "in the rare cases where disclosure of historically significant materials had been sought, district judges had reasonably resolved applications by reference to their inherent authority" (quoting Minutes of Meeting of April 22–23, 2012, Advisory Committee on Criminal Rules, at 7–8), contrary to the subsequent holding in *McKeever*).

[15]     *See also McKeever*, 920 F.3d at 850 (D.C. Circuit majority also noting the circuit split). The Sixth, Eighth, and Eleventh Circuits have agreed with the D.C. Circuit's interpretation of Rule 6(e) to bar exceptions to grand jury secrecy not expressly listed in the rule, *see In re Grand Jury 89-4-72*, 932 F.2d 481, 488 (6th Cir. 1991); *United States v. McDougal*, 559 F.3d 837, 840 (8th Cir. 2009); *Pitch v. United States*, 953 F.3d 1226, 1229 (11th Cir. 2020) (en banc), while the Second and Seventh Circuits have permitted disclosure of grand jury matters in certain circumstances, namely those involving historically significant matters, not named in Rule 6(e)(3), *see In re Petition of Craig*, 131 F.3d 99, 101–03 (2d Cir. 1997); *Carlson v. United States*, 837 F.3d 753, 763 (7th Cir. 2016). *See also In re Petition for Order Directing Release of Records*, 27 F.4th 84, 90–91 (1st Cir. 2022) (noting the circuit split). Nonetheless, the Supreme Court chose not to weigh in on the division.

Rules,"

https://www.uscourts.gov/sites/default/files/standing_committee_agenda_book_jan_2022_0.pdf.

As its main reason for opting not to amend Rule 6(e), the Advisory Committee cited concern that "the possibility that a witness's testimony could be released—even after several decades—would impede witness cooperation . . . . [And] could adversely affect the reputational and business interests of witnesses and their families." *Id.* at 262.[16] Such an exception, in the Advisory Committee's view, was also "qualitatively different from the existing exceptions to grand jury secrecy, . . . which are intended to facilitate the resolution of other criminal and civil cases, and the investigation of terrorism." *Id.* at 263. Specifically addressing Justice Breyer's suggestion that the Committee "resolve the circuit split regarding disclosure of grand jury materials," the Advisory Committee concluded "that the question whether courts have inherent authority to order that disclosure is substantive, not procedural, and thus beyond the Committee's purview." *Id.* at 264.[17] That exchange does not provide much hope for clarity on Rule 6(e), leaving in the

---

[16]     This view was not unanimous, with a judge member of the Advisory Committee being "less persuaded . . . that an exception for materials of exceptional historical interest will dissuade witnesses from testifying," Comm. on Rules of Practice and Procedure, Standing Comm. Agenda Book (June 7, 2022), Tab 1B, ("Minutes of Comm. on Rules of Practice and Procedure – Draft, Jan. 4, 2022") at 44, https://www.uscourts.gov/sites/default/files/2022-06_standing_committee_agenda_book_final.pdf, given the other exceptions to grand jury secrecy, including the possibility of release of "grand-jury materials to the defendant once the defendant has been indicted," *id.* Indeed, multiple legal mechanisms, other than a promise of grand jury secrecy, are available and regularly employed effectively to obtain truthful testimony from witnesses before the grand jury, even those witnesses who are otherwise uncooperative, including grand jury subpoenas or material witness warrants, under 18 U.S.C. § 3144, to ensure the appearance of a witness before the grand jury; government motions to compel testimony; the threat of civil and criminal contempt sanctions for failing to testify, under 18 U.S.C. §§ 401 and 402; and the risk of criminal penalties for perjury, under 18 U.S.C. § 1621.

[17]     At the same meeting, the Rules Committee reportedly discussed a suggestion from the undersigned Chief Judge and former Chief Judge Royce L. Lamberth that "Rule 6(e) be amended to clarify the court's authority to issue opinions that discuss and potentially reveal matters before the grand jury." Comm. on Rules of Practice and Procedure, Standing Comm. Agenda Book (June 7, 2022), Tab 1B, ("Minutes of Comm. on Rules of Practice and Procedure – Draft, Jan. 4, 2022") at 44, https://www.uscourts.gov/sites/default/files/2022-06_standing_committee_agenda_book_final.pdf. The Rules Committee believed that suggestion "is not yet ripe" because "[t]here has not been any indication so far that redaction is inadequate as a means to avoid contentions that the release of a judicial opinion somehow violates Rule 6." *Id.* "Absent any recent contentions that the release of a judicial opinion violated Rule 6, the Advisory Committee did not think it should act on the suggestion at this time."

crossfire the current situation of variation among the circuits as to whether disclosure is ever possible outside enumerated exceptions, as well as often significant impingement on the norm of public access to judicial decisions and associated filings, when those decisions are ancillary to grand jury proceedings.

In the meantime, the task before this Court is to examine whether, in consultation with the government and according to the requirements of Rule 6(e) and binding precedent, the petitioners' requested grand jury materials may be unsealed, even in redacted form. That procedure is embodied in this Court's Local Criminal Rule 6.1 regarding grand jury matters. *See* D.D.C. LCrR 6.1 ("Papers, orders and transcripts of hearings subject to this Rule, or portions thereof, may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury."); *see also In re Sealed Case*, 199 F.3d at 527 (interpreting Local Criminal Rule 6.1 to permit a district court to consider disclosure of ancillary grand jury proceedings at the request of a party for redacted materials). Thus, the following analysis considers petitioners' requested disclosures and weighs whether continued secrecy is necessary, in whole or in part, to protect grand jury secrecy.

## B. The Instant Petitions

Petitioners argue that certain materials from ancillary grand jury proceedings may be released to the public with redactions so as not to reveal activities occurring before the grand jury. *See* NYT Pets.' Mem. at 7–9; Politico Pets.' App. at 1. Petitioners assert that the requested materials concern "assertions of executive privilege . . . invoked by a former president [who] lacks the support of a current president[,]" amounting to "a matter of profound national moment"

---

*Id.* Waiting for "contentions" due to courts violating Rule 6(e) to arise as a measure of "ripeness" for this issue to be addressed is not helpful, when courts try valiantly *not* to violate Rule 6(e).

such that legal arguments and rulings on "the proper scope of the executive privilege" are "of tremendous public and historical importance" and "have significant ramifications" that justify disclosure to the public.  NYT Pets.' Mem. at 8–9 (internal citation omitted); *accord* Politico Pets.' App. at 1 ("It's hard to imagine a weightier constitutional question for the courts to decide than the interplay between current and former presidents on matters of executive privilege that may bear on national security.").  Petitioners do not assert that any enumerated exception to grand jury secrecy in Rule 6(e)(3) applies here.

      The ultimate question in this dispute is whether any requested records may be disclosed, even with redactions, without revealing matters occurring before the grand jury.[18]  Having reviewed all the docket entries in Case No. 22-gj-25 and considered the government's explanation for its position in favor of continued secrecy, the Court concludes that redactions would not suffice to disclose any materials without revealing grand jury matters and so maintaining sealing is necessary.  Petitioners' requests stem from an ongoing grand jury investigation being conducted in this District.  The continued secrecy of certain details about that investigation is required for the sake of grand jury witnesses and the government's investigation. *See In re Sealed Case No. 99-3091*, 192 F.3d at 1002 (citing *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1070 (D.C. Cir. 1998)).  Redacting information in those materials would not sufficiently uphold that secrecy because matters occurring before the grand jury are so deeply intertwined with non-secret information that any partially unsealed record would prove useless, or worse, misleading.

---

[18]     In line with the Circuit's interpretation of Local Criminal Rule 6.1, this opinion serves as the Court's due consideration of petitioners' request with full explanation detailing a "logical connection to the individual request[s]." *See In re Sealed Case*, 199 F.3d at 527.

For instance, the requested copy of the docket for Case No. 22-gj-25 would reveal the names of any witnesses and the nature of any disputes regarding grand jury testimony. The requested materials concerning privileges asserted to withhold testimony are also matters occurring before the grand jury. *See Dow Jones*, 142 F.3d at 505. Accordingly, any arguments presented by witnesses and/or privilege holders and any resulting judicial decisions resolving those disputes must remain sealed in their entirety because the facts produced from the investigation are so integral to any legal analysis that revealing the latter would also reveal the former. Even any legal standards relevant to the dispute, despite being general summaries, only become relevant if certain events occurred before the grand jury, so revealing applicable law would consequently disclose the strategy and nature of the investigation. The same is true of any transcripts from sealed hearings before this Court on ancillary grand jury matters. *See* FED. R. CRIM. P. 6(e)(5) ("[T]he court must close any hearing to the extent necessary to prevent disclosure of a matter occurring before the grand jury."). At hearings, parties present in-depth arguments about the scope and application of legal issues pertinent to the dispute such that separating matters occurring before the grand jury would be not just a challenging task, but nearly impossible here. *See Dow Jones*, 142 F.3d at 502 ("A proceeding in the district court to quash a subpoena, or to compel testimony, or to immunize a witness would, it seems to us, almost invariably reveal matters occurring before the grand jury.").

Petitioners' best argument to justify disclosure is that the historical significance of the requested materials coupled with the existing reporting on those materials makes continued secrecy unnecessary. *See* NYT Pets.' Mem. at 8–9; Politico Pets.' App. at 1–2. If public interest in a significant and historical event or high-level government officials could serve as the sole ground to justify disclosure of grand jury matters in exceptional circumstances, petitioners' case

here would be incredibly strong. *Cf. In re Sealed Case No. 99-3091*, 192 F.3d at 1003 n.9 ("[I]n cases involving well-known people, the public has a right to be kept reasonably informed about what steps are being taken to pursue allegations of wrongdoing so that they can determine whether prosecutors are applying the law equally to all citizens."). Unfortunately for petitioners, that is not the standard for disclosure of grand jury material. Indeed, *McKeever* forecloses this argument: Historical significance alone, without a Rule 6(e)(3) exception, is not enough to disclose grand jury material. *See* 920 F.3d at 844–45; *see, e.g., supra* n.13.[19]

To support their second argument that public reporting obviates any need for continued secrecy, petitioners attach several news articles reporting on the requested materials that they believe exist and citing as their sources "people familiar with" the matters. *See, e.g.*, NYT Pets.' Mem., Ex. B (Feuer & Haberman, *Top Pence Aides Testify to Grand Jury in Jan. 6 Investigation*); *id.*, Ex. D (Swan, *Justice Department Subpoenas Trump White House Lawyer Eric Herschmann*). Those sources, however, are not the type of confirmation by government attorneys, grand jury witnesses, or a privilege holder that the Circuit has found sufficient to make secrecy no longer necessary. *See Dow Jones*, 142 F.3d at 505. In fact, in the articles attached to petitioners' motion, both the government and individuals thought to be grand jury witnesses declined to comment on the reporting. *See* Gov't's Opp'n (SEALED) at 3, 16 (noting the lack of confirmation of any investigative details from any parties to ancillary proceedings, including the government). Since there has been no equivalent disclosure to the government or a grand jury

---

[19] By contrast to the standard under Rule 6(e) for release of judicial records implicating grand jury matters, the general standard set out in *United States v. Hubbard*, 650 F.2d at 317–22, for unsealing of judicial records, including criminal investigation materials such as search warrants, weighs more heavily the presumption favoring public access to judicial proceedings and would allow consideration of historical significance and national importance. *See L.A. Times Commc'ns. LLC v. United States*, 28 F.4th 292, 297 (D.C. Cir. 2022) ("A seal may be maintained only 'if the district court, after considering the relevant facts and circumstances of the particular case, and after *weighing the interests advanced by the parties in light of the public interest* and the duty of the courts, concludes that justice so requires.'" (quoting *MetLife v. Fin. Stability Oversight Council*, 865 F.3d 661, 665–66 (D.C. Cir. 2017) (quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981))) (emphasis added).

witness "proclaim[ing] from the rooftops" about sealed grand jury information, *see Dow Jones*, 142 F.3d at 505, the cited news reporting is insufficient to unseal any grand jury material under Rule 6(e).  *See* Gov't's Opp'n (SEALED) at 16–18.[20]  Thus, the public reporting about grand jury matters does not support disclosure at this time.

That said, to support continued sealing of the requested materials, the government asserts that this grand jury investigation has never been confirmed publicly.  *See* Gov't's Opp'n (SEALED) at 13–14.  Not so, at least now.  The Attorney General's announcement of Special Counsel Smith's appointment specifically outlined "two ongoing criminal investigations[,]" one of which "as described in court filings in the District of Columbia" concerns interference with the results of the 2020 presidential election.  Press Release, U.S. Dep't of Justice, Appointment of a Special Counsel; *see also* Order No. 5559-2022, U.S. Dep't of Justice, Appointment of John L. Smith as Special Counsel.  Although the grand jury is not mentioned by name, anyone apprised of how criminal investigations progress could surmise that Special Counsel Smith's investigations are proceeding before that body.  When asked to address the impact of this DOJ announcement on grand jury secrecy in the instant applications, *see* Min. Order (Feb. 7, 2023) ("explain (a) how [unsealing with redactions] may be accomplished here when petitioners seek a specific judicial decision, and related submissions, in connection with a publicly announced Special Counsel investigation"), the government simply ignored this portion of the Order and chose not to respond to the fact of the Special Counsel's appointment, *see* Gov't's Supp. Br.

---

[20]     The government adds that any release of grand jury matter "would reward potential violations" of any protective order issued in this ancillary grand jury proceeding and "encourage future leaks of protected information."  Gov't's Opp'n (SEALED) at 15.  The potential for leaks, however, is not a consideration on which the Court may rest its decision.  *See In re Sealed Case*, 199 F.3d at 527 (to justify unsealing under Local Criminal Rule 6.1, "[t]he District Court's explanation . . . must rest on something more than the administrative burdens[;] . . . it must be more substantial than, say, an arguable possibility of leaks").

In addition to the announcement of the Special Counsel appointment and investigation scope, the government has supported the partial unsealing of two judicial decisions resolving filter team motions for permission to disclose to the investigative team returns from search warrants following review for privilege, which decisions expressly refer to ongoing grand jury investigations. *See In re Search of Info. Associated with Two Accounts Stored at Premises Controlled by Google LLC*, 2022 U.S. Dist. LEXIS 237972, Att. A at *3–4 (describing the "ongoing grand jury investigation" that involved the review of certain email accounts); Att. B at *12, 23 (summarizing the government's need for the files of Jeffrey Clark relevant to the government's investigations into the 2020 election). Nonetheless, in the Court's view, because those acknowledgements do not specifically mention ancillary proceedings occurring within the investigation relevant to petitioners' applications, they do not warrant any additional disclosure of grand jury matters.

Accordingly, absent any applicable enumerated exception allowing disclosure under Rule 6(e) of the requested information (*i.e.*, dockets, any judicial decisions, and any associated filings ancillary to grand jury matters), and the impossibility of fairly excising, through redactions, grand jury matters from any of the requested materials, particularly in this context of highly focused media attention, grand jury secrecy does not yield in this case at this time and requires denial of petitioners' applications.

## III. CONCLUSION

For the foregoing reasons, continued secrecy under Federal Rule of Criminal Procedure 6(e) is necessary to protect matters occurring before the grand jury. Thus the requested dockets, court opinions and orders, legal briefing, and argument hearing transcripts requested by petitioners, including those related to two grand jury subpoenas 22-GJ-060991378 and 22-GJ-

060991380, shall continue to remain under seal and petitioners' applications for disclosure are denied.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  February 23, 2023

_Beryl A. Howell_

BERYL A. HOWELL
Chief Judge