**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE APPLICATION OF THE NEW YORK TIMES CO. AND CHARLIE SAVAGE FOR ACCESS TO CERTAIN DOCKETS, ORDERS, LEGAL BRIEFING, AND ARGUMENT TRANSCRIPTS ANCILLARY TO JANUARY 6 GRAND JURY PROCEEDINGS | Case No. 22-mc-100-JEB<br><br>Hearing Requested |

**PETITIONERS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ACCESS TO
JUDICIAL RECORDS ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS
<u>CONCERNING FORMER PRESIDENT DONALD J. TRUMP</u>**

BALLARD SPAHR LLP

Chad R. Bowman (#484150)
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren P. Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
bowmanchad@ballardspahr.com
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for Petitioners*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND .............................................................................................................. 1

     A.     The 2020 Election And The January 6, 2021 Capitol Riot ...................... 1

     B.     The Special Counsel's Investigation ...................................................... 2

     C.     Disputes Over Executive Privilege Surface ........................................... 4

     D.     Petitioners' Access Application .............................................................. 6

     E.     The Government's Official Acknowledgement ....................................... 8

     F.     The D.C. Circuit's Ruling And Remand ................................................ 9

ARGUMENT ................................................................................................................... 9

I.     THE COURT SHOULD RELEASE THE REQUESTED RECORDS
     BECAUSE THEY ARE NO LONGER PROTECTED BY GRAND JURY
     SECRECY RULES ............................................................................................ 10

II.    ALTERNATELY AND ADDITIONALLY, THE COURT SHOULD
     RELEASE THE REQUESTED RECORDS PURSUANT TO THE FIRST
     AMENDMENT RIGHT OF ACCESS ............................................................... 12

     A.     The First Amendment Right Of Access Applies To Opinions And
     Orders.................................................................................................... 12

     B.     The First Amendment Right Of Access To Opinions And Orders
     Applies Even In The Context Of Ancillary Proceedings ....................... 15

     C.     The Government Cannot Justify Completely Sealing These Judicial
     Records Of Intense Public Interest And Importance ............................. 16

CONCLUSION ................................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                     **Page(s)**

*Banks v. Manchester*,
   128 U.S. 244 (1888) ........................................................................................ 13

*Branzburg v. Hayes*,
   408 U.S. 665 (1972) .................................................................................. 12, 17

*Co. Doe v. Pub. Citizen*,
   749 F.3d 246 (4th Cir. 2014) .................................................................... 14, 15

*Dhiab v. Trump*,
   852 F.3d 1087 (D.C. Cir. 2017) ......................................................... 13, 16, 17

*Globe Newspaper v. Superior Court*,
   457 U.S. 596 (1982) .................................................................................. 15, 16

*In re Grand Jury Proceedings (Judith Miller)*,
   493 F.3d 152 (D.C. Cir. 2007) ................................................................. 15, 16

*In re Grand Jury Subpoena, Judith Miller*,
   438 F.3d 1141 D.C. Cir. 2006 ....................................................................... 17

*Leopold v. United States*,
   964 F.3d 1121 (D.C. Cir. 2020) ...................................................................... 7

*Lowenschuss v. W. Publ'g*,
   542 F.2d 180 (3d Cir. 1976) .......................................................................... 14

*McKeever v. Barr*,
   920 F.3d 842 (D.C. Cir. 2019) ........................................................................ 8

*In re Motions of Dow Jones & Co.*,
   142 F.3d 496 (D.C. Cir. 1998) ................................................................. 15, 16

*Nash v. Lathrop*,
   6 N.E. 559 (Mass. 1886) ............................................................................... 14

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ...................................................................................... 15

*In re North*,
   16 F.3d 1234 (D.C. Cir. 1994) ...................................................................... 11

*In re Press Application for Access to Judicial Records Ancillary to Certain
   Grand Jury Proceedings Concerning Former Vice President Pence*,
   678 F. Supp. 3d 135 (D.D.C. 2023) ................................................... 10, 11, 12

*PepsiCo v. Redmond*,
  46 F.3d 29 (7th Cir. 1995) ................................................................14

*Politico v. United States*,
  2024 WL 1739096 (D.C. Cir. Apr. 23, 2024) ...............................9, 10, 12

*Press-Enter. Co. v. Super. Ct.*,
  464 U.S. 501 (1984) ........................................................................17

*Press-Enter. Co. v. Super. Ct.*,
  478 U.S. 1 (1986) .......................................................................13, 17

*In re Reporters Comm. for Freedom of the Press*,
  773 F.2d 1325 (D.C. Cir. 1985) .........................................................13

*Richmond Newspapers v. Virginia*,
  448 U.S. 555 (1980) ..................................................................7, 12, 17

*In re Sealed Case*,
  932 F.3d 915 (D.C. Cir. 2019) ...........................................................17

*In re Sealed Case No. 99-3091*,
  192 F.3d 995 (D.C. Cir. 1999) ...........................................................17

*Senate of Puerto Rico v. Dep't of Justice*,
  823 F.2d 574 (D.C. Cir. 1987) .......................................................17, 18

*Torres v. INS*,
  144 F.3d 472 (7th Cir. 1998) ..............................................................14

*Trump v. Thompson*,
  20 F.4th 10 (D.C. Cir. 2021) .............................................................1, 2

*Union Oil v. Leavell*,
  220 F.3d 562 (7th Cir. 2000) ..............................................................14

*United States v. Hubbard*,
  650 F.2d 293 (D.C. Cir. 1980) ..............................................................7

*Wash. Post v. Robinson*,
  935 F.2d 282 (D.C. Cir. 1991) ...........................................................17

## PRELIMINARY STATEMENT

Pursuant to the Court's Minute Order of August 12, 2024, Petitioners POLITICO LLC and Kyle Cheney submit this supplemental memorandum in further support of their application for access to judicial records regarding the invocations of executive privilege that former President Trump or former Trump Administration officials made in judicial proceedings ancillary to the grand jury investigations into the 2020 presidential election. The Court should grant Petitioners' application and provide access to these records of extraordinary public interest and importance, both because the government has officially acknowledged the existence of those judicial proceedings, and because the First Amendment right of access applies to the records of those proceedings and the government cannot carry its heavy burden to keep them sealed.

## BACKGROUND

### A.     The 2020 Election And The January 6, 2021 Capitol Riot

On November 3, 2020, Joseph R. Biden, Jr. was elected President of the United States. Then-President Trump, however, refused to concede, "claiming that the election was 'rigged' and characterized by 'tremendous voter fraud and irregularities.'" *Trump v. Thompson*, 20 F.4th 10, 17 (D.C. Cir. 2021). Trump "and his allies filed a series of lawsuits challenging the results of the election. The courts rejected every one of the substantive claims of voter fraud that was raised." *Id.* But, according to the final report of the House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "House Select Committee"), Trump "disregarded the rulings of the courts and rejected the findings and conclusions and advice from his Justice Department, his campaign experts, and his White House and Cabinet advisors," and chose "to try to overturn the election on January 6th and took a series of very specific steps to attempt to achieve that result." H.R. Rep. No. 117-663 (Dec. 22, 2022), at 28.

Those efforts came to a head on January 6, 2021, when thousands of rioters stormed the Capitol in a "blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process." *See* Press Release, *Director Wray's Statement on Violent Activity at the U.S. Capitol Building*, FBI (Jan. 7, 2021), https://www.fbi.gov/news/press-releases/director-wrays-statement-on-violent-activity-at-the-us-capitol-building-010721. These events "marked the most significant assault on the Capitol since the War of 1812." *Trump*, 20 F.4th at 18-19. The government has since charged more than 1,400 defendants with crimes related to the Capitol riot. *See, e.g.*, *43 Months Since the Jan. 6 Attack on the Capitol*, Dep't of Justice (Aug. 6, 2024), https://www.justice.gov/usao-dc/43-months-jan-6-attack-capitol.

### B.      The Special Counsel's Investigation

In November 2022, U.S. Attorney General Merrick Garland appointed Jack Smith as Special Counsel "to conduct the ongoing investigation into whether any person or entity violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021." *See* Off. of the Att'y Gen. Order No. 5559-2022 at 1 (Nov. 18, 2022), https://www.justice.gov/d9/press-releases/attachments/2022/11/18/2022.11.18_order_5559-2022.pdf. Attorney General Garland also authorized the Special Counsel to "prosecute federal crimes arising from the investigation of these matters and refer to the appropriate United States Attorney discrete prosecutions that may arise from the Special Counsel's investigation." *Id.* at 2.

Over the following months, the public learned about multiple grand jury subpoenas issued by the Special Counsel in connection with that investigation, including subpoenas to local officials in states where Trump claimed that the election was "rigged." *See* Amy Gardner et al., *Justice Dept. subpoenas Ariz., Mich., Wis. officials in Trump Jan. 6 probe*, Wash. Post (Dec. 6, 2022), https://www.washingtonpost.com/politics/2022/12/06/jack-smith-trump-communications-

subpoenas/.  These subpoenas reflect that the Special Counsel sought "any and all communications in any form to, from, or involving Donald J. Trump for President, Inc. . . , Donald J. Trump, or any employee or agent of, or attorney for the Trump Campaign."  *See* Allan Smith et al., *Special counsel Jack Smith subpoenas local officials in Trump investigation*, NBC News (Dec. 6, 2022), https://www.nbcnews.com/politics/donald-trump/special-counsel-jack-smith-subpoenas-local-officials-trump-investigati-rcna60363.

In May 2022, the public learned that investigators expanded their focus to include "the creation of alternate slates of pro-Trump electors seeking to overturn Joseph R. Biden Jr.'s victory in the 2020 election, with a particular focus on a team of lawyers that worked on behalf of President Donald J. Trump."  *See* Alan Feuer et al., *Intensifying Inquiry Into Alternate Electors Focuses on Trump Lawyers*, N.Y. Times (May 25, 2022), https://www.nytimes.com/2022/05/25/us/politics/pro-trump-lawyers-elector-scheme.html. According to that news report, grand jury subpoenas were issued to Trump lawyers Rudolph W. Giuliani and John Eastman, among others.  *Id.*

Later in the summer of 2022, the public learned that Marc Short, former chief of staff to former Vice President Mike Pence, appeared before the grand jury, and that former Pence counsel Greg Jacob testified as well.  *See, e.g.*, Alan Feuer & Maggie Haberman, *Top Pence Aides Testify to Grand Jury in Jan. 6 Investigation*, N.Y. Times (July 25, 2022), https://www.nytimes.com/2022/07/25/us/politics/marc-short-pence-jan-6.html.  In the following weeks, former Trump White House counsel Pat Cipollone, deputy counsel Patrick Philbin, and Trump lawyer Eric Herschmann also reportedly received similar subpoenas.  *See* Betsy Woodruff Swan, *Justice Department subpoenas Trump White House lawyer Eric Herschmann*, Politico (Aug. 15, 2022), https://www.politico.com/news/2022/08/15/justice-department-

subpoenas-trump-lawyer-eric-herschmann-00051899; Spencer S. Hsu, *Trump White House counsel Cipollone appears before Jan. 6 grand jury*, Wash. Post (Sept. 2, 2022), https://www.washingtonpost.com/dc-md-va/2022/09/02/cipollone-philbin-jan6-grand-jury/ (noting that Cipollone and Philbin were observed at courthouse to appear before grand jury).

In mid-September 2022, the public learned that approximately 40 additional grand jury subpoenas had been served, including on a number of individuals associated with either the Trump Administration or the Trump campaign, seeking information on the fake elector plan. *See* Glenn Thrush et al., *Justice Dept. Issues 40 Subpoenas in a Week, Expanding its Jan. 6 Inquiry*, N.Y. Times (Sept. 12, 2022), https://www.nytimes.com/2022/09/12/us/politics/trump-aides-jan-6-doj.html ("The new subpoenas encompass a wide variety of those in Mr. Trump's orbit, from low-level aides to his most senior advisors."). A number of the witnesses had previously provided public testimony to the House Select Committee, and counsel for one of the subpoena recipients, Bernard B. Kerik, confirmed the grand jury subpoena. *Id.*

## C.    Disputes Over Executive Privilege Surface

Also in September 2022, the public learned about certain emails exchanged between Trump's lawyers and former Trump White House lawyer Eric Herschmann, which revealed that Herschmann had "tried to get specific guidance from Mr. Trump's current lawyers on how to handle questions from prosecutors that raise issues of executive privilege or attorney-client privilege." *See* Maggie Haberman & Glenn Thrush, *Trump's Team of Lawyers Marked by Infighting and Possible Legal Troubles of Its Own*, N.Y. Times (Sept. 16, 2022), https://www.nytimes.com/2022/09/16/us/politics/trump-lawyers-herschmann.html. The New York Times, which obtained these emails, reported that "[a]fter ignoring Mr. Herschmann or giving him what he seemed to consider perplexing answers to the requests for weeks," two of Trump's lawyers advised him to "[a]ssert sweeping claims of executive privilege." *Id.*

The public subsequently learned of a closed hearing in September 2022, regarding a

motion filed by lawyers for former President Trump to assert executive privilege.  As The New

York Times noted in its analysis of the importance of the privilege issue being litigated:

> In the Jan. 6 investigation, the Justice Department has obtained
> grand jury subpoenas for several former aides to Mr. Trump seeking
> testimony about his conversations. Mr. Trump's lawyers have
> instructed them not to answer questions, based on a broad
> conception of his residual powers of executive privilege, even
> though Mr. Biden has rejected the idea as not in the best interests of
> the United States.
>
> A dispute over whether those witnesses may lawfully decline to
> answer certain questions is now playing out before Beryl Howell,
> the chief judge of the Federal District Court for the District of
> Columbia, behind closed doors, according to people familiar with
> the matter.

See Charlie Savage & Glenn Thrush, *Jan. 6 and Mar-a-Lago Inquiries Converge in Fights Over*

*Executive Privilege*, N.Y. Times (Sept. 30, 2022),

https://www.nytimes.com/2022/09/30/us/politics/trump-executive-privilege.html.  The

Washington Post later reported that then-Chief Judge Beryl A. Howell issued a sealed decision

on the scope of the privilege – and that the D.C. Circuit declined an emergency motion to stay

that testimony.  *See* Spencer S. Hsu et al., *Judge bucks Trump, orders Pence aide to testify to*

*Jan. 6 grand jury*, Wash. Post (Oct. 14, 2022), https://www.washingtonpost.com/dc-md-

va/2022/10/14/marc-short-grand-jury-testify-pence-trump.

In February 2023, Pence announced that he, too, had received a subpoena from the

Special Counsel.  *See* Melissa Quinn & Jonah Kaplan, *Pence confirms he'll resist subpoena from*

*special counsel in Trump probes*, CBS News (Feb. 15, 2023),

https://www.cbsnews.com/news/mike-pence-subpoena-challenge-special-counsel-jack-smith-

trump-investigation/.  Pence stated that he would resist the subpoena, based on the Vice

President's role as president of the Senate under the Constitution's Speech or Debate Clause,
while Trump separately challenged the subpoena on grounds of executive privilege and accused
the Department of Justice of "attempting to destroy the long accepted, long held, Constitutionally
based standards of attorney-client privilege and executive privilege." *See, e.g.*, Kyle Cheney,
*Trump appeals order for Pence to testify in Jan. 6 probe*, Politico (Apr. 10, 2023),
https://www.politico.com/news/2023/04/10/trump-appeal-pence-january-6-testimony-00091231.

### D.      Petitioners' Access Application

On October 18, 2022, Petitioners submitted a letter to then-Chief Judge Howell asking to
unseal "all documents filed with this Court related to former President Trump's privilege
challenge to the Jan. 6 grand jury investigation," and noting that "[i]t's hard to imagine a
weightier constitutional question for the courts to decide than the interplay between current and
former presidents on matters of executive privilege that may bear on national security." *See In
re Appl. of Politico & Kyle Cheney to Unseal All Documents Related to the Jan. 6 Grand Jury
Investigation*, No. 22-mc-104-BAH (D.D.C. Oct. 26, 2022), ECF No. 1.  The Court deemed the
letter an application under Local Rule 57.6 and docketed it as a miscellaneous action.  Three
days later, The New York Times and its journalist Charlie Savage filed a similar application in
this case.  *See* ECF No. 1.  On October 26, 2022, the District Court consolidated the two
miscellaneous matters.  *See* Minute Order of Oct. 26, 2022.

On November 15, 2022, the government filed a sealed, *ex parte* motion for leave to file
under seal its opposition to the press applications.  *See* Notice of Filing at 1, ECF No. 8.  The
Court granted that motion in part the same day, allowing the government to file its response
under seal but declining to seal the order granting that request.  *See* Order, ECF No. 9.

On February 23, 2023, the Court denied the consolidated access application in full.  The
Court's opinion, which itself was released only in redacted form, recognizes that "[t]he sealing of

judicial decisions and ancillary judicial records relied on to resolve matters pending before the

Court is anathema, 'reflect[ing] the antipathy of a democratic country to the notion of 'secret

law,' inaccessible to those who are governed by that law.'"  Mem. Op. at 1, ECF No. 18 (quoting

*Leopold v. United States*, 964 F.3d 1121, 1127 (D.C. Cir. 2020)).  It also notes that

> courts have long recognized that the press plays a critical role in
> facilitating public access and acknowledged that "[o]ne of the
> demands of a democratic society is that the public should know what
> goes on in courts by being told by the press what happens there, to
> the end that the public may judge whether our system of criminal
> justice is fair and right."

*Id.* at 1-2 (quoting *Richmond Newspapers v. Virginia*, 448 U.S. 555, 573 n.9 (1980)).

According to the Court, however, "applicable procedural rules and binding precedent

require that public access to judicial records must give way in the face of compelling interests

requiring that grand jury material remain out of public view, *perhaps forever*, when unsealing

would reveal 'a matter occurring before the grand jury,' except in limited, enumerated

circumstances."  *Id.* at 2 (emphasis in original) (quoting Fed. R. Crim. P. 6(e)).  The Court thus

acknowledged that this case "highlights the tension that lies between the important policies

underlying grand jury secrecy, as currently codified in Rule 6(e), and 'the always strong

presumption in favor of public access to judicial proceedings.'"  *Id.* (quoting *United States v.

Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)).

Ultimately, the Court concluded that it could not unseal any of the requested judicial

records on the basis that "continued secrecy of certain details about that investigation is required

for the sake of grand jury witnesses and the government's investigation," and that "[r]edacting

information in those materials would not sufficiently uphold that secrecy because matters

occurring before the grand jury are so deeply intertwined with non-secret information that any

partially unsealed record would prove useless, or worse, misleading."  *Id.* at 27.  Indeed, the

Court stated that even where, as here, the government acknowledged the existence of the grand jury investigation, courts cannot reveal so much as the "legal standards relevant to the dispute" because, "despite being general summaries, [they] only become relevant if certain events occurred before the grand jury, so revealing applicable law would consequently disclose the strategy and nature of the investigation." *Id.* at 28.

At the same time, the Court expressed fundamental concerns about the pervasive secrecy it believed Rule 6(e) required. As the Court observed, one consequence of sealing ancillary proceedings is that "decisions implicating novel issues, significant historical events, and nationally known individuals and entities – for instance, interpreting the contours of constitutional rights and testimonial privileges asserted by political figures – are known only to the witnesses and/or privilege holders raising the issues and are withheld from the public," and that "[e]ven parties litigating similar disputes and judges deciding them will not have access, at least immediately, to certain decisions and legal reasoning because of the secrecy Rule 6(e) demands." *Id.* at 11-12. The Court also admitted confusion over how to determine when continued sealing of "a matter occurring before the grand jury" is "necessary" under Rule 6(e) – particularly without the inherent authority to unseal grand jury materials following the D.C. Circuit's ruling in *McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019). *Id.* at 2, 15. Petitioners timely noticed an appeal from the Court's ruling. ECF No. 20.

E.     **The Government's Official Acknowledgement**

On August 1, 2023, while Petitioners' appeal was pending, the Special Counsel's investigation that gave rise to the disputes over executive privilege at issue in this action resulted in Trump's indictment in this District on four felony charges. *See* Indictment, *United States v. Trump* ("*U.S. v. Trump*"), No. 23-cr-257-TSC (D.D.C. Aug. 1, 2023), ECF 1. Three weeks later,

during a status hearing in that case, the government officially acknowledged that it and Trump

had "engaged in extensive pre-indictment litigation regarding executive privilege . . . in five

sealed proceedings starting in August 2022 and lasting through March of 2023" concerning "the

scope of grand jury testimony for 14 witnesses."  *See* Hrg. Tr. at 37:17-24, *U.S. v. Trump*

(D.D.C. Aug. 28, 2023), ECF 38.

###### F.      The D.C. Circuit's Ruling And Remand

On April 23, 2024, the D.C. Circuit reversed Judge Howell's ruling and remanded for

further proceedings.  *Politico v. United States* ("*In re Politico*"), 2024 WL 1739096 (D.C. Cir.

Apr. 23, 2024) (per curiam).  As the D.C. Circuit explained, the "public disclosure that privilege

disputes arose before the grand jury materially alters the legal landscape in this case," such that

"[t]he district court may be able to unseal some of the requested documents, at least in part, due

to [that] disclosure."  *Id.* at *4.  Indeed, the D.C. Circuit specified that this "disclosure, *coupled*

*with the press's extensive reporting about the privilege disputes*, makes it possible that the

underlying privilege disputes, or at least the aspects of them that have been publicly disclosed,

are so widely known that they are no longer protected by Rule 6(e)."  *Id.* (emphasis added).

On remand, this Court directed the parties to propose a briefing schedule on the issues to

be decided on remand.  *See* Minute Order of Aug. 2, 2024.  The parties did so on August 9, 2024,

*see* ECF 24, and the Court adopted that schedule, *see* Minute Order of Aug. 12, 2024.

Petitioners now timely file this supplemental brief in further support of their access application.

## <u>ARGUMENT</u>

For two separate and independent reasons, the Court can and should permit Petitioners

access to records of tremendous public interest that are ancillary to extraordinary grand jury

proceedings involving a former President of the United States.  <u>First</u>, as a result of the

government's official acknowledgment of and the extensive news reporting about the ancillary

proceedings in this District over executive privilege, those proceedings are now "so widely

known that they are no longer protected by Rule 6(e)." *In re Politico*, 2024 WL 1739096 at *4.

Second, the constitutional right of access to judicial records applies to the court opinions and

orders issued in those ancillary proceedings, and the government cannot demonstrate that sealing

those records is essential to preserve higher values and is narrowly tailored to serve that interest.

## I.   THE COURT SHOULD RELEASE THE REQUESTED RECORDS BECAUSE THEY ARE NO LONGER PROTECTED BY GRAND JURY SECRECY RULES

The government's official acknowledgment that it engaged in ancillary litigation over

assertions of executive privilege arising from the Trump grand jury investigation has indeed

"materially alter[ed] the legal landscape in this case." *Id.*  As a result of that disclosure, this

Court has ample authority to release the requested records.

This Court's ruling in *In re Press Application for Access to Judicial Records Ancillary to

Certain Grand Jury Proceedings Concerning Former Vice President Pence* ("*In re Pence*"), 678

F. Supp. 3d 135 (D.D.C. 2023), illustrates and explains why the Court should unseal as much as

possible of the requested records as a result of this official disclosure.  There, after Pence

publicly acknowledged receiving a grand jury subpoena, challenging the subpoena in this Court,

losing that challenge, and contemplating an appeal, multiple news organizations moved for

access to those ancillary judicial records.  This Court granted that motion over the government's

objection, observing that the requirements for grand jury secrecy set out in Rule 6(e) "yield when

there is no secrecy left to protect."  *Id.* at 141 (cleaned up).

Any need for secrecy has likewise disappeared here given the government's official

acknowledgment that it "engaged in *extensive* pre-indictment litigation regarding executive

privilege," which included the government's specifically disclosing the timing of that litigation

(August 2022 through March 2023), the number of witnesses involved (fourteen) and the number

of sealed proceedings that resulted (five).  *See* Hrg. Tr. at 37:17-24, *U.S. v. Trump* (D.D.C. Aug.

28, 2023), ECF 38 (emphasis added).  Moreover, as here, the press there sought access to "the

legal discussion surrounding the dispute[s]" that have "already [been] revealed," including in

particular "the analysis contained in (1) the briefing in support of or in opposition to [the

witnesses'] position, (2) a transcript of the hearing[s] on the issue, and (3) this Court's

Opinion[s] and Order[s] resolving the dispute[s]."  *In re Pence*, 678 F. Supp. 3d at 143.  To the

extent that any "material protected by Rule 6(e)" might remain in these documents, this Court

has explained that such information "is no 'leaven in a loaf of bread' that 'cannot be separated

out,'" but rather "it is crust that may be neatly pared away" through targeted redactions.  *Id.* at

144 (quoting *In re North*, 16 F.3d 1234, 1242 (D.C. Cir. 1994)).

The "discretionary considerations" that this Court addressed in *In re Pence* weigh in

favor of access here as well.  In particular, access to these records "will permit the public to see

(in part) what informed the reasoning behind the Court's resolution of a novel constitutional

dispute," which will "carry far-reaching public implications."  *Id.* at 145 (cleaned up).  Indeed,

recent events underscore the value of access to adjudications of executive privilege specifically.

A coalition of news organizations represented by undersigned counsel is presently litigating

against the government, in this District, over public access to certain records related to a special

counsel investigation that the government claims are shielded from disclosure by executive

privilege.  *See Jud. Watch v. Dep't of Justice*, No. 24-cv-700-TJK (D.D.C.).  At the same time,

also in this District, the House Judiciary Committee is litigating against the government over a

subpoena for the same records, to which the government has likewise objected on the basis of

executive privilege.  *See Comm. on the Judiciary v. Garland*, No. 24-cv-1911-ABJ (D.D.C.).

Decades of precedent on the common law and constitutional rights of access to judicial records teaches that unsealing the records of these ancillary proceedings on executive privilege would benefit the parties who are arguing the pending litigation over the same issue, the judges who are adjudicating the pending litigation over the same issue, and the members of the public who are monitoring the pending litigation over the same issue. "The Court therefore should release any information it can about this significant constitutional dispute so long as it does not reveal material protected by grand-jury secrecy." *In re Pence*, 678 F. Supp. 3d at 145 (cleaned up).

## II.    ALTERNATELY AND ADDITIONALLY, THE COURT SHOULD RELEASE THE REQUESTED RECORDS PURSUANT TO THE FIRST AMENDMENT RIGHT OF ACCESS

This Court should release the opinions and orders issued in the ancillary disputes over executive privilege for the additional and independent reason that those records are subject to the First Amendment right of access and the government cannot carry the heavy burden to justify keeping those records sealed.[1]

### A.    The First Amendment Right Of Access Applies To Opinions And Orders

In *Richmond Newspapers*, the Supreme Court recognized that "the right to attend criminal trials is implicit in the guarantees of the First Amendment," as "without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated.'" 448 U.S. at 580 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)). The Supreme Court and lower courts have since then identified additional categories of proceedings and records to which the constitutional right of access

---

[1] The D.C. Circuit declined to address this argument "because [Petitioners] did not raise it before the district court." *In re Politico*, 2024 WL 1739096, at *4. Petitioners do so now in this brief – rather than file a separate application asserting the First Amendment right of access that would likewise be assigned to this Court under Local Rule 57.6 – because, as the D.C. Circuit observed in remanding this matter, "requiring [Petitioners] to file a new petition would needlessly delay an eventual decision on the merits of [their] request." *Id.* at *5.

attaches, and "sketched a two-stage process for resolving whether the First Amendment affords

the public access to a particular judicial record or proceeding." *Dhiab v. Trump*, 852 F.3d 1087,

1102 (D.C. Cir. 2017) (Williams, J., concurring).

"First the court must determine whether a qualified First Amendment right of public

access exists." *Id.*  To make that determination, "the Supreme Court has identified two

requirements that it calls the tests of experience and logic.  The experience inquiry looks to

whether the proceeding has historically been open.  And the somewhat oddly labeled logic

inquiry asks whether the right of access plays an essential role in the proper functioning of the

judicial process and the government as a whole." *Id.* at 1103 (cleaned up) (citing *Press-Enter.*

*Co. v. Super. Ct.* ("*Press-Enterprise II*"), 478 U.S. 1, 9 (1986) and *In re Reporters Comm. for*

*Freedom of the Press*, 773 F.2d 1325, 1331-32 (D.C. Cir. 1985)).  "Both tests must be satisfied

before we can conclude that the First Amendment provides a qualified right of access." *Id.*  If

the right of access applies, then the records or proceedings "may be sealed but only if 'specific,

on the record findings are made demonstrating that closure is essential to preserve higher values

and is narrowly tailored to serve that interest.'" *Id.* at 1092 (quoting *Press-Enterprise II*, 478

U.S. at 13-14).

Both experience and logic favor access to court opinions and orders.  In terms of

experience, there is perhaps no type of judicial record more firmly established in our common

law system as traditionally available to the public than court orders and decisions.  As the

Supreme Court explained more than a century ago, "The whole work done by the judges

constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is

free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a

constitution or a statute." *Banks v. Manchester*, 128 U.S. 244, 253 (1888).  Put another way:

> As ours is a common-law system based on the "directive force" of precedents, its effective and efficient functioning demands wide dissemination of judicial decisions. . . . Even that part of the law which consists of codified statutes is incomplete without the accompanying body of judicial decisions construing the statutes. Accordingly, under our system of jurisprudence the judiciary has the duty of publishing and disseminating its decisions.

*Lowenschuss v. W. Publ'g*, 542 F.2d 180, 185 (3d Cir. 1976); *see also Union Oil v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go without saying that the judge's opinions and orders belong in the public domain."); *PepsiCo v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995) ("Opinions are not the litigants' property. They belong to the public, which underwrites the judicial system that produces them.").

In terms of logic, it is likewise hard to overstate the importance of access to opinions and orders. Such decisions *are* the law, and in our common law system each ruling contributes to a body of precedent that has historically recognized the vital importance of public access:

> The decisions and opinions of the justices are the authorized expositions and interpretations of the laws, which are binding upon all the citizens. They declare the unwritten law, and construe and declare the meaning of the statutes. Every citizen is presumed to know the law thus declared, and it needs no argument to show that justice requires that all should have free access to the opinions, and that it is against sound public policy to prevent this, or to suppress and keep from the earliest knowledge of the public the statutes, or the decisions and opinions of the justices. Such opinions stand, upon principle, on substantially the same footing as the statutes enacted by the legislature. It can hardly be contended that it would be within the constitutional power of the legislature to enact that the statutes and opinions should not be made known to the public.

*Nash v. Lathrop*, 6 N.E. 559, 560 (Mass. 1886); *accord Torres v. INS*, 144 F.3d 472, 474 (7th Cir. 1998) ("The idea of secret laws is repugnant. People cannot comply with laws the existence of which is concealed."). Moreover, access to opinions and orders promotes public confidence in and supervision of the courts. *See, e.g.*, *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir.

2014) ("Without access to judicial opinions, public oversight of the courts, including the processes and the outcomes they produce, would be impossible."); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (interpreting FOIA to require "disclosure of all opinions and interpretations which embody the agency's effective law and policy," consistent with "congressional aversion to secret [agency] law" and "an affirmative congressional purpose to require disclosure of documents which have the force and effect of law") (cleaned up).

Public access to judicial opinions and orders thus passes the tests of both experience and logic, and the First Amendment right of access applies accordingly.

**B.   The First Amendment Right Of Access To Opinions And Orders Applies Even In The Context Of Ancillary Proceedings**

The government may argue, as it did before the D.C. Circuit, that even if the First Amendment right of access applies to court opinions and orders generally, it does not apply to opinions and orders issued in ancillary proceedings, and to be sure the government could cite the D.C. Circuit's statement that "[a]lthough public access plays an important role in other aspects of the judicial process, 'there is no First Amendment right of access to grand jury proceedings,' nor do First Amendment protections extend to ancillary materials dealing with grand jury matters, such as [a] concurring opinion." *In re Grand Jury Proceedings (Judith Miller)* ("*In re Judith Miller II*"), 493 F.3d 152, 154 (D.C. Cir. 2007) (quoting *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499, 502 (D.C. Cir. 1998)).  But this Court should reject that argument just as the Supreme Court rejected that approach to analyzing the scope of the constitutional right of access in *Globe Newspaper v. Superior Court*, 457 U.S. 596 (1982).

There, the Commonwealth of Massachusetts argued that although there is a right of access to criminal trials, that right should not extend to criminal trials specifically involving sex crimes against minors, because "criminal trials have not always been open to the press and

general public during the testimony of minor sex victims."  457 U.S. at 605 n.13.  As the Court

explained, it had already "discerned a First Amendment right of access to criminal trials based in

part on the recognition that as a general matter criminal trials have long been presumptively

open." *Id.*  The question of whether the right applies to "any particular criminal trial, such as a

murder trial . . . or a rape trial" did not depend on "the historical openness of *that type* of

criminal trial." *Id.* (emphasis added); *accord Dhiab*, 852 F.3d at 1104-05 (Williams, J.,

concurring) (discussing *Globe Newspaper* and noting that "the Court applied its experience-and-

logic tests to criminal trials generally, rejecting the state's effort to make the classification at the

level of the testimony in question – that of a minor child in a sexual abuse case").

Just as in *Globe Newspaper*, therefore, where the Supreme Court decided that the proper

question was whether the First Amendment right of access applies to criminal trials *generally*,

not to a specific type of testimony at a specific type of trial, the question before this Court is

whether the right of access applies to judicial opinions and orders *generally*, not whether it

applies to opinions and orders issued in specific types of proceedings, such as ancillary

proceedings.  Because *Dow Jones* and *Judith Miller II* did not reach that specific question, this

Court should do so and, given the extensive history and compelling logic discussed above,

recognize that the constitutional right of access applies to opinions and orders.

### C.   The Government Cannot Justify Completely Sealing These Judicial Records Of Intense Public Interest And Importance

If the Court agrees that a First Amendment right of access applies to judicial opinions and

orders, then to justify withholding from the public the court opinions and orders adjudicating

claims of executive privilege at issue here, the government must demonstrate that such sealing

"is essential to preserve higher values and is narrowly tailored to serve that interest." *Dhiab*, 852

F.3d at 1102 (Williams, J., concurring).  Specifically, to overcome the constitutional access right

the government must demonstrate that:

    a.    There is a substantial probability of prejudice to a compelling interest if the right is not limited.  *Press-Enterprise II*, 478 U.S. at 13-14; *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise I*"), 464 U.S. 501, 510 (1984); *Richmond Newspapers*, 448 U.S. at 580-81.

    b.    There is no alternative to a limitation of the access right that will adequately protect against the threatened harm.  *Press-Enterprise II*, 478 U.S. at 13-14; *Wash. Post v. Robinson*, 935 F.2d 282, 289-90 (D.C. Cir. 1991).

    c.    Restricting access will effectively protect against the threatened harm.  *Press-Enterprise II*, 478 U.S. at 14; *Robinson*, 935 F.2d at 291-92.

    d.    The restriction on access is narrowly tailored to minimize the harm to the public's access rights.  *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*, 935 F.2d at 287.

In analyzing these issues, two points bear particular emphasis.

**First**, the Supreme Court and the D.C. Circuit have consistently released opinions resolving disputes in ancillary proceedings – including opinions of major public interest – with narrow redactions rather than blanket withholdings.  *See, e.g.*, *Branzburg*, 408 U.S. 665 (arising out of journalists' motions to quash grand jury subpoenas); *In re Grand Jury Subpoena, Judith Miller ("Judith Miller I")*, 438 F.3d 1141 D.C. Cir. 2006) (same); *In re Sealed Case No. 99-3091*, 192 F.3d 995 (D.C. Cir. 1999); *In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019).

**Second**, in deciding what if any material must be redacted to protect the secrecy of matters before the grand jury, the D.C. Circuit has instructed that "[t]here is no per se rule against disclosure of any and all information which has reached the grand jury chambers." *Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).  "The disclosure of information coincidentally before the grand jury which can be revealed in such a manner that

its revelation would not elucidate the inner workings of the grand jury is not prohibited." *Id.*
(cleaned up).

 With these principles in mind, this Court should conclude that the First Amendment right
of access requires the release of any opinions and orders adjudicating claims of executive
privilege over communications between Trump and former Trump Administration officials, with
only those narrow redactions necessary to protect grand jury secrecy.

**CONCLUSION**

 For the foregoing reasons, Petitioners respectfully request that this Court grant their
application and promptly unseal to the greatest extent possible the requested judicial records.

Dated:  August 23, 2024   Respectfully submitted,

            BALLARD SPAHR LLP

            */s/ Chad R. Bowman*
            Chad R. Bowman (#484150)
            Charles D. Tobin (#455593)
            Maxwell S. Mishkin (#1031356)
            Lauren P. Russell (#1697195)
            1909 K Street NW, 12th Floor
            Washington, DC 20006
            Tel: (202) 661-2200
            Fax: (202) 661-2299
            bowmanchad@ballardspahr.com
            tobinc@ballardspahr.com
            mishkinm@ballardspahr.com
            russelll@ballardspahr.com

            *Counsel for Petitioners*