**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| IN RE APPLICATION OF THE NEW YORK TIMES CO. AND CHARLIE SAVAGE FOR ACCESS TO CERTAIN DOCKETS, ORDERS, LEGAL BRIEFING, AND ARGUMENT TRANSCRIPTS ANCILLARY TO JANUARY 6 GRAND JURY PROCEEDINGS | Case No. 22-mc-100-JEB |
|---|---|

**PETITIONERS' REPLY IN FURTHER SUPPORT OF ACCESS TO JUDICIAL RECORDS ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS**

In this action, Petitioners[1] seek access to opinions and orders issued as to the invocations of executive privilege that former President Trump or others made in judicial proceedings ancillary to the grand jury investigations into the 2020 presidential election (the "Executive Privilege Decisions").[2] The government now agrees that this Court should release these Executive Privilege Decisions in redacted form. *See* Gov. Resp. to Suppl. Br. ("Resp.") (ECF No. 28) at 1. Indeed, the docket reflects that the government has already provided the Court with its proposed redactions to the Executive Privilege Decisions. *See* Minute Order of Sept. 16, 2024 (referring to ECF No. 30, "The Government's Submission of Proposed Redactions"). Petitioners therefore request, as an initial matter, that the Court release those redacted versions of the Executive Privilege Decisions to the press and public as promptly as possible. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) (observing that "the public benefits attendant with open proceedings are compromised by delayed disclosure").

[1] Pursuant to Federal Rule of Civil Procedure 20(a)(1), Bloomberg L.P., Cable News Network, Inc., The E.W. Scripps Company, and WP Company LLC d/b/a The Washington Post have joined POLITICO LLC and Kyle Cheney's petition for access in this matter. ECF No. 26.

[2] Petitioners have agreed, for purposes of this action, to narrow their request for access only to opinions and orders on executive privilege, rather than all filings, hearing transcripts, and other judicial records related to those Executive Privilege Decisions.

For two reasons, however, that initial release should represent the floor of public access to these important judicial records, not the ceiling. **First**, if this Court concludes, in conducting an independent review of the Executive Privilege Decisions under Rule 6(e), that the government's proposed redactions go beyond what must remain protected for grand jury secrecy, then the Court should release less-redacted versions of the records under Local Rule 6.1. *See, e.g.*, *In re Press Appl. for Access to Jud. Records Ancillary to Certain Grand Jury Proceedings Concerning Former Vice President Pence*, 678 F. Supp. 3d 135, 145 (D.D.C. 2023) ("*In re Pence*") (the Court "should release any information it can about [a] significant constitutional dispute so long as it does not reveal material protected by grand-jury secrecy") (cleaned up).

**Second**, if the Court agrees with Petitioners that the First Amendment right of access also applies to the Executive Privilege Decisions, then the Court should further unseal the records with only those redactions that are both "essential to preserve higher values" and "narrowly tailored to serve that interest." *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*"). That argument has not been waived or forfeited, and this Court should conclude that the First Amendment right of access applies to the Executive Privilege Decisions.

## I. Under Rule 6(e), The Executive Privilege Decisions Should Be Released With Only Those Redactions Necessary To Protect Still-Secret Grand Jury Information

Though the government's submission of proposed redactions streamlines the release of the Executive Privilege Decisions, the government does not have the last word on what this Court should unseal. That is because the Judicial Branch, not the Executive Branch, ultimately determines what redactions, if any, are necessary to protect grand jury secrecy. *See, e.g.*, *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 155 (D.C. Cir. 2007) (rejecting the government's proposed redactions as "far too narrow"). Moreover, this Court, not the

government, decides pursuant to Local Rule 6.1 "whether it should release [the records] at this time." *In re Pence*, 678 F. Supp. 3d at 144 (emphasis in original).

The government's latest filing suggests that it views the scope of permissible disclosure here too narrowly. According to the government, its official disclosure that it had "engaged in extensive pre-indictment litigation regarding executive privilege . . . in five sealed proceedings starting in August 2022 and lasting through March of 2023" concerning "the scope of grand jury testimony for 14 witnesses,"[3] which led the D.C. Circuit to vacate and remand in this case, amounts only to a "brief, three-sentence disclosure." Resp. at 10. In its order, however, the D.C. Circuit expressly stated that the government's official disclosure, "coupled with the press's extensive reporting about the privilege disputes, makes it possible that the underlying privilege disputes, or at least the aspects of them that have been publicly disclosed, are so widely known that they are no longer protected by Rule 6(e)." *Politico v. United States*, 2024 WL 1739096, at *4 (D.C. Cir. Apr. 23, 2024) (emphasis added). The D.C. Circuit thus instructed this Court, in deciding what it can and should release without violating grand jury secrecy rules, to take into account not only the official disclosure itself, but also the extensive press reporting on these ancillary matters. *See* Suppl. Br. (ECF No. 25) at 2-6 (summarizing that reporting).

Likewise, Rule 6(e) obliges the Court to seal records "as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury," but D.C. Circuit precedent "reflects the common-sense proposition that secrecy is no longer 'necessary' when the contents of grand jury matters have become public." *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1140 (D.C. Cir. 2006) (unsealing in part documents "containing grand jury matters that the special counsel confirmed in the indictment or that have been widely reported") (emphasis

[3] Hrg. Tr. at 37:17-24, *U.S. v. Trump*, No. 23-cr-157 (D.D.C. Aug. 28, 2023), ECF 38.

added). Thus, while press reports themselves may not waive Rule 6(e) protections for grand jury materials, "[t]here must come a time . . . when information is sufficiently widely known that it has lost its character as Rule 6(e) material." *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) (Rule 6(e) did not prevent disclosure of a report containing grand jury material, the substance of which was already public); *see also, e.g.*, *In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir. 1990) (vacating injunction on journalists publishing identity of an unindicted suspect, which the presiding judge inadvertently shared in open court, because "[o]nce announced to the world, the information lost its secret characteristic").

The secrecy that Rule 6(e) is intended to protect has eroded here due to both official acknowledgement and extensive press reporting about potential witnesses' assertions of executive privilege. Petitioners therefore request that, after the Court unseals the Executive Privilege Decisions in the redacted form the government has initially proposed, the Court independently review the Executive Privilege Decisions and lift any of the government's redactions that are no longer necessary to protect what "unquestionably remains grand jury material" that Rule 6(e) obliges the Court to keep secret. *In re Miller*, 438 F.3d at 1141; *see also, e.g.*, *In re Pence*, 678 F. Supp. 3d at 143 (limiting redactions "to remove any references to the parties' or the Court's understanding of what, if any, specific testimony the grand jury sought" from Pence, "or the factual or strategic basis for such subpoena").

## II. Under The First Amendment, The Court Should Further Unseal The Executive Privilege Decisions To Leave Only Those Redactions That Are Essential To Preserve Higher Values And Narrowly Tailored To Serve That Interest

Petitioners have shown that the First Amendment right of access also applies to the Executive Privilege Decisions, which necessarily overrides any secrecy requirement arising solely from the Federal Rules. The government errs in claiming that this argument has been

waived and further misapprehends the experience and logic test that, properly applied, shows how the First Amendment right of access squarely attaches to the Executive Privilege Decisions.

**A. Petitioners have not waived their First Amendment argument**

The government asks this Court to not even consider Petitioners' First Amendment argument because the D.C. Circuit did not address it. The government's position on that point is incorrect, inequitable, and inefficient.

**First**, the D.C. Circuit did not reject Petitioners' First Amendment argument on its merits, but rather merely stated that it would not address the argument "because Politico did not raise it before the district court." *Politico*, 2024 WL 1739096, at *4. For the law of the case doctrine to apply, however, "a court must affirmatively [have] decide[d] an issue, explicitly or by necessary implication." *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir. 2012) (cleaned up). The D.C. Circuit expressly did not address this argument because the District Court did not have the opportunity to consider it first. Petitioners now provide the Court this very opportunity.

**Second**, the government errs in suggesting, *see* Resp. at 12, that Petitioners somehow "forfeited" this argument. This action began when Kyle Cheney, a journalist writing "in [his] capacity as a reporter for POLITICO seeking to shed light on these crucial issues," sent a two-page letter to then-Chief Judge Beryl A. Howell respectfully requesting public access to "all documents filed with this Court related to former President Trump's privilege challenge to the Jan. 6 grand jury investigation." *See* ECF No. 1, No. 22-mc-00104-BAH (D.D.C.) at 1. Then-Chief Judge Howell treated the letter as an application for access and docketed it in a new miscellaneous matter. Petitioners can thus hardly be faulted for not specifying precisely, as counsel might have, whether they sought access to these records pursuant to the First

Amendment right of access, the common law right of access, Local Rule 6.1, some other authority, or any combination thereof.

**Third**, Petitioners have noted, *see* Suppl. Br. at 12 n.1, and the government does not dispute, that Petitioners could simply file another petition that expressly invokes the First Amendment right of access, which would be assigned to this Court under Local Rule 57.6 and which would oblige the government to respond to the very same arguments Petitioners make here. Forcing Petitioners to jump through such hoops would elevate form over substance and contravene the spirit of the D.C. Circuit's remand order, which rejected the government's similar argument that Petitioners should have to file a new petition in light of the official disclosures, because that "would needlessly delay an eventual decision on the merits." *Politico*, 2024 WL 1739096, at *5. This Court should likewise consider the merits of Petitioners' First Amendment argument now, rather than delay a decision on that argument for delay's sake.

**B. The First Amendment right of access applies to Executive Privilege Decisions**

As Petitioners have shown, under the applicable experience and logic test, the First Amendment right of access squarely attaches to judicial opinions and orders, including the Executive Privilege Decisions at issue in this action. Suppl. Br. at 12-16. The government misconstrues this test by focusing on access to grand jury materials themselves, rather than on access to judicial decisions that just happen to adjudicate disputes arising out of a grand jury.

The question before this Court is not whether the public has a right of access to grand jury materials: Petitioners are not asking to unseal grand jury witness testimony or prosecutors' communications with grand jurors. *Cf.* Resp. at 12 (government stating that the First Amendment does not apply to "Grand Jury Materials"). The question is whether the public has a right of access to opinions and orders – to the law – that courts issue when they have adjudicated

disputes that arise out of grand jury proceedings. The answer that the experience and logic test provides to that straightforward question is yes, the First Amendment right of access applies, because the need for public access to judicial decisions is foundational to our society.

As to the experience prong, there is a long history to the principle that law, including judicial decisions, must be public. *See Nash v. Lathrop*, 6 N.E. 559, 560 (Mass. 1886) ("Every citizen is presumed to know the law thus declared, and it needs no argument to show that justice requires that all should have free access to the opinions . . . ."); *Banks v. Manchester*, 128 U.S. 244, 253 (1888) (judicial decisions, which are "binding [on] every citizen," must be "free for publication to all"). Indeed, nearly eight decades ago, the Supreme Court championed the historical disdain for judicial secrecy in the context of proceedings ancillary to the grand jury, noting that "distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French monarchy's abuse of the lettre de cachet." *In re Oliver*, 333 U.S. 257, 268-69 (1948). Thus, as the Court explained, "[e]ven when witnesses before grand juries refuse to answer proper questions, the grand juries do not adjudge the witnesses guilty of contempt of court in secret or in public or at all. Witnesses who refuse to testify before grand juries are tried on contempt charges before judges sitting in open court." *Id.* at 265 (emphasis added).

Since then, courts have repeatedly made public judicial decisions resolving disputes in ancillary proceedings with limited redactions to protect confidential grand jury information. *E.g.*, *Nixon v. Sirica*, 487 F.2d 700, 719-22 (D.C. Cir. 1973) (per curiam) (decision on the scope of President Nixon's assertion of executive privilege in response to a grand jury subpoena); *In re Subpoena to Nixon*, 360 F. Supp. 1, 13-14 (D.D.C. 1973) (same); *In re Sealed Case*, 121 F.3d 729, 734, 761-62 (D.C. Cir. 1997) (decision on executive privilege regarding a grand jury

subpoena served on the Counsel to the President in connection with an investigation of former Secretary of Agriculture Espy); *In re Grand Jury*, 705 F.3d 133 (3d Cir. 2012) (decision on whether federal grand jury subpoena can pierce attorney-client and work product privilege); *In re Grand Jury Proceedings*, 616 F.3d 1172, 1175 (10th Cir. 2010) (same); *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032 (2d Cir. 1984) (same); *see also In re Grand Jury Subpoena, Judith Miller*, 397 F.3d 964 (D.C. Cir. 2005) (decision on applicability of First Amendment reporter's privilege to response to federal grand jury subpoena); *Branzburg v. Hayes*, 408 U.S. 665 (1972) (same).[4]

As to the logic prong, the government wholly fails to address the logic – and necessity – of access to the Executive Privilege Decisions, focusing instead on "access to grand jury materials," Resp. at 15, which again is not at issue. It is profoundly illogical to hide from Petitioners (and the public) the most recent jurisprudence from this Court on the scope of Executive Privilege, simply because those opinions relate to grand jury proceedings. The Tenth Circuit acknowledged this in publishing, over the appellant's objections, opinions concerning the discovery and use of materials before a grand jury, because "publication of these two opinions, in redacted form, is necessary to advance the law on certain issues discussed in those opinions." *In re Grand Jury Proceedings*, 616 F.3d at 1175. As then-Chief Judge Howell likewise observed in the opinion in this action that the D.C. Circuit vacated on appeal, as a result of keeping these opinions and orders secret, "decisions implicating novel issues, significant historical events, and nationally known individuals and entities—for instance, interpreting the contours of constitutional rights and testimonial privileges asserted by political figures—are known only to

[4] *See also Account Servs. Corp. v. United States (In re Grand Jury Subpoena Issued June 18, 2009)*, 593 F.3d 155, 156-57 (2d Cir. 2010) (affirming contempt order for failure to comply with grand jury subpoena); *In re Marc Rich & Co.*, 707 F.2d 663, 665 (2d Cir. 1983) (same).

the witnesses and/or privilege holders raising the issues and are withheld from the public." *In re New York Times Co.*, 657 F. Supp. 3d 136, 146 (D.D.C. 2023). Indeed, "[e]ven parties litigating similar disputes and judges deciding them will not have access, at least immediately, to certain decisions and legal reasoning." *Id.* (emphasis added).

This concern is no mere hypothetical. As petitioners have noted, *see* Suppl. Br. at 11-12, and the government does not dispute, undersigned counsel represent a coalition of news organizations that are presently litigating against the government, in open court, over whether certain records related to another special counsel investigation are, as the government claims, shielded by executive privilege. *See Jud. Watch v. Dep't of Justice*, No. 24-cv-700-TJK (D.D.C.). Simultaneously, the House Judiciary Committee is litigating against the government over a subpoena for the same records, to which the government has likewise objected on the basis of executive privilege. *See Comm. on the Jud. v. Garland*, No. 24-cv-1911-ABJ (D.D.C.). It is possible that then-Chief Judge Howell issued persuasive authority on executive privilege within these ancillary proceedings – and possible that the D.C. Circuit issued what should represent controlling authority on the topic – but Congress, the press, and the public have no way to know. Likewise, the Courts in those two ongoing cases could ultimately issue decisions on executive privilege that conflict with the Executive Privilege Decisions, but future litigants – other than the government – would have no idea about this split authority. As then-Chief Judge Howell aptly put it, this status quo "is anathema" to our "democratic society." *In re New York Times Co.*, 657 F. Supp. 3d at 139-40.

Because public access to the Executive Privilege Decisions passes the tests of both experience and logic, the First Amendment right of access applies and the government can justify only those withholdings that are both "essential to preserve higher values" and "narrowly

tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510. Thus, the Court should ultimately release the Executive Privilege Decisions with such limited redactions, if any, that satisfy the First Amendment right of access.

**CONCLUSION**

For the foregoing reasons, Petitioners respectfully request that this Court (1) immediately unseal the redacted versions of the Executive Privilege Decisions that the government has submitted to the court; (2) subsequently conduct an independent review of the Executive Privilege Decisions and re-release them with only those redactions that the Court deems proper under Rule 6(e) and Local Rule 6.1; and (3) conclude that the First Amendment right of access applies to the Executive Privilege Decisions and ultimately provide the press and public access to those opinions and orders with only those redactions that this Court determines are both "essential to preserve higher values" and "narrowly tailored to serve that interest."

Dated: September 20, 2024

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Chad R. Bowman*
Chad R. Bowman (#484150)
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren P. Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
bowmanchad@ballardspahr.com
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for Petitioners*